L. JEWETT GROVE, and others, of the SOCIETY OF GERMAN BAPTISTS, *vs.* THE TRUSTEES OF THE CONGREGATION OF THE DISCIPLES OF JESUS CHRIST, in the City and Precincts of Baltimore.

*Grants of Land to Religious Societies — When void under the 34th Article of the Declaration of Rights.*

In 1787, H conveyed a parcel of land—less than two acres—to trustees for the use of a religious society. The deed did not express that the land was " for a ·church, meeting, or other house of worship," or " for a burying ground;" nor did it declare that the land should "be improved, enjoyed, or used only for such purposes;" and it was not averred or shown that there had been any assent of the Legislature to the grant. The society remained in possession of the land using it as a burying ground until 1808, when H made another deed conveying the property to trustees for the use of the same religious society, and defining more accurately the purposes of the trust. HELD:

1st. That the deed of 1787, was in contravention of the 34th Article of the Declaration of Rights and consequently void.

2d. That the original grantor had the right to treat it as defective and void, and to execute the deed of 1808, which, therefore, became the first valid and effective grant.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed by the appellants. The appellees demurred and answered. By agreement of counsel, a judgment sustaining the demurrer was entered, *pro forma.* From that judgment the present appeal was taken. The bill alleged in substance that by deed dated 1787, John Eager Howard, for the consideration of £100 specie, conveyed to certain trustees therein named, " and their successors," the lands in question, " to and for the only proper use and behoof of the said German Baptist Society [the Tunkers] forever;" that under that deed the trustees entered, and those for whom they held the land, used it in full and undisputed enjoyment for many years, for a place of religious worship, and for the burial of their dead; that in 1808, the same grantor made a new deed of the same lands to trustees, in part new, " and the male heirs of their bodies severally and lawfully begotten;" and by the same deed sought to enlarge and alter the trusts of the deed of 1787.

That in 1849, one John Stouffer, [representing himself to be the sole surviving trustee under the deed of 1808,] and others, executed a " license to the Trustees of the Congregation of the Disciples of Jesus Christ," to build a Church on the trust-lands, for the " exclusive worship " of the Disciples. The consideration for this license, under which the appellees claim exclusive rights, was one dollar. The structures erected as conditions of the deed, being under claim of the appellees, for the *exclusive* use of the Disciples, no other consideration than the one dollar moved to the Tunkers; that the house, wall and vault, the building of which were

the conditions of the deed of license, were not built pursuant to the covenants of the deed; that the Tunkers reserved the right to worship in the house built by the Disciples; which right, though not set forth in the deed, "was by them fully and explicitly conceded." In fact, until recently, the Disciples admitted that their right was subordinate to the primary right of the Tunkers; that the appellees, claiming exclusive right to the property, had, for the last year preceding the beginning of this suit, excluded the Tunkers from the right to worship in the house and had refused all offers for a peaceful adjustment; that the Tunkers are the very Society of Christians who paid for the property, and in trust for whom alone the deed was made by Howard.

The entire rights of the appellees are acquired under the deed of " license " of 1849. That license was based on the new trusts and powers declared in the deed of 1808. But the deed of 1808 was a nullity, if the deed of 1787 passed the fee out of Howard. He had nothing to grant.

The bill prayed that the trust should be executed in favor of the complainants; that the Court would appoint proper trustees under the deed of 1787, and decree possession of the property to the complainants and remove the defendants. To this was added the prayer for general relief.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*Innes Randolph,* for the appellants.

*E. Otis Hinkley,* for the appellees.

MILLER, J., delivered the opinion of the Court.

The disposition of this appeal depends mainly upon the rights of the parties under the several conveyances filed as exhibits with the bill.

By deed of the 13th of February, 1787, John Eager Howard, for the consideration of £100, conveyed ·to nine named individuals "and their successors" a piece of ground (less than two . acres) adjoining Baltimore town, in trust "for the society of German Baptists commonly called Dunkers, to and for the only proper use and behoof of the said German Baptist Society forever, and to and for no other use, intent or purpose whatsoever." Upon its face this deed is in direct contravention of the 34th Article of the then Declaration of Rights. It is a conveyance of land in trust for a "religious sect, order, or denomination," and though not exceeding two acres, yet the deed does not express that it is "for a church, meeting, or other house of worship and for a burying ground," nor does it declare that the land "shall be improved, enjoyed or used only for such purposes." No assent of the Legislature thereto is averred, nor does any such assent appear ever to have been given. Such a conveyance the Article referred to declares shall be void, and the Courts have uniformly enforced like provisions in all the Declarations of Rights under the several Constitutions of the State. 1 *Bland*, 529; *Murphy vs. Dallam*, 28 *Md.*, 338. That being the law as to the invalidity of this conveyance, the original grantor, in our opinion, had the right to treat it as defective and void, and to execute the deed of the 17th of November, 1808, which therefore became the first valid and effective grant, and must operate as such, and not as a mere affirmance of the deed of 1787. This view dispenses with the necessity of deciding whether the deed of 1787 was defective to pass the fee for want of words of limitation to the heirs of the grantees.

By the deed of 1808 it is stated that "it was and is the true intent of the said John Eager Howard that the said lot of ground should at all times thereafter be used as a burial ground, or a place of deposit for the remains of the members of the Society of German Baptists, commonly called Dunkers, *and* such · other persons as a majority of the trustees for the time being, residing in Baltimore City and precincts, should

or shall think proper and give permission to be buried therein, and that any house erected or to be erected thereon should and might at all times be used as a place of public or private worship for the said Society, *or* such other persons as a majority of the trustees aforesaid residing in the city and precincts of Baltimore should think proper." The deed then conveys the lot to thirteen named persons, including four of the original trustees named in the deed of 1787, and to their heirs and assigns in trust for the above mentioned uses and purposes and none other. From an examination of the terms of this trust it is apparent that whilst the lot is to be used as a burial ground for the Dunkers, *and* such other persons as a majority of the trustees might give permission to be there buried, in respect to the house for public or private worship, erected or to be erected thereon, the provision is that it may at all times be used by the Dunkers, *or* such other persons as a majority of the trustees should think proper to permit so to use it.

On the 15th of September, 1849, an indenture was executed between a majority of the trustees or the heirs of the trustees, under the deed of 1808, of the one part, and " the trustees of the congregation of the Disciples of Jesus Christ," a body corporate, incorporated under the Act of 1802, ch. 111, of the other part, which, after reciting in full the deed of 1808, states in effect that there was then on the premises no house whatever; that the parties of the first part deemed it advisable one should be erected in accordance with the provisions of the deed of trust; that the parties of the second part, " in consideration of the license, liberty, privilege, sufferance, permission, and right, granted to them by this indenture," have agreed to build at their own expense a house on part of the ground, and also a brick wall around the whole lot, and to erect a public vault thereon ; and that the parties of the first part " think proper in the exercise of the power vested in them by said deed of trust, to permit and appoint that said house which may be erected by the parties hereto of

the second part shall be used as a place of public or private worship by the parties hereto of the second part *exclusively,* as hereinafter particularly mentioned, during the continuance of said corporation and this license.". The grantors, then, in consideration of the premises, of the sum of one dollar, and of the performance of covenants hereinafter mentioned to be performed by the grantees, "concede, give and grant the liberty, license, privilege, faculty, and permission, and right, unto the said parties of the second part, to occupy, use, possess and enjoy *exclusively* for the uses hereinafter declared," a designated *part* of the lot. It then provides the licensees shall hold the building to be used at all times hereafter during their corporate existence as a place of public or private worship for themselves exclusively; "and it is hereby declared to be the true intent and meaning of these premises and of the parties hereto, that the said building to be erected by the" licensees "as a place for public worship when erected shall be held, used, occupied, possessed and enjoyed by" them "at all times hereafter for the purpose aforesaid *without the let, hindrance, molestation, interruption or entry* of the said parties hereto of the first part, or any of them, unless upon cessor of the estate of the" licensees, "by abuser or non-user or other forfeiture of the rights, privileges, liberties and license, hereby granted unto them; but it is nevertheless understood as the true intent and meaning of these presents and of the parties hereto that the rights, privileges, liberties and license hereby given, granted and conceded, and intended so to be, are such as the said parties hereto of the first part may lawfully give, grant and concede and not other or further."

The licensees then covenant and agree on their part, forthwith to erect, at their own expense, on the licensed ground, a good and sufficient two-story brick house, of certain dimensions for worship; to build, within three years, a good and substantial brick wall around the whole lot, to keep the same in repair during the continuance of the license, and pay all paving taxes and assessments that at any time may be levied

or assessed on the whole or any part of the entire lot; to erect forthwith, at their own expense, a good and substantial brick vault for the interment of the dead, on some part of the lot; to purchase, at their own expense, before they proceed to erect a house of worship, the right of property held by certain parties in a family burial ground and vault, built on part of the licensed ground; not to underlet the licensed premises without consent of a majority, for the time being, of the trustees under the deed of trust, nor use the licensed premises, or any part of them for any other purpose than is authorized by that deed. It is then agreed, that this instrument is made upon condition that if the licensees do not faithfully perform and keep each and every one of the several covenants on their part to be performed and kept, then it shall be lawful for the trustees for the time being, under the deed of trust, to reënter into the licensed premises and re-possess and enjoy the same as of their former estate, and in such case, this indenture shall be void and of none effect.

This license professes to be given in pursuance of the deed of 1808, and, in our opinion, the trustees, in granting it, did not exceed the power and authority vested in them by that instrument. Under that deed, whilst the Dunkers cannot be excluded from the use of the premises as a burial-ground, the trustees have the power to permit other persons to use, and exclusively, if they think proper, any house erected or to be erected on part of the granted premises, as a place of public or private worship. The appellees obtained, for a valuable consideration in building and keeping in repair the walls around the whole lot, and in other onerous duties and obligations which they assumed, a license to erect on part of the lot a house of worship, for their own exclusive use, if they preferred at any time to exclude others therefrom. They erected the building at their own expense, and the object of the present bill is, by a decree of a Court of Equity, to remove them from its possession and deliver the same to the appellants, and in the meantime, for an order *pendente lite* to secure a

joint or common use thereof by both parties, and, if neces-sary, to appoint a receiver of the property for that purpose.

The bill necessarily bases the complainants' claim to the relief asked, upon the invalidity of this license, resulting from their construction of the effect and operation of the antecedent deeds and the rights of the parties thereunder. That construction being in our opinion erroneous, and the license a valid and effective exercise of the authority con-ferred upon the trustees, it follows the demurrer was properly interposed and sustained by the *pro forma* decree of the Cir-cuit Court. Any rights the appellants may have, founded on a forfeiture or non-performance of the conditions contained in the deed of license, are provided for by that instrument itself, and must be asserted in another *forum.* The powers of a Court of Equity cannot be invoked to declare and en-force such forfeiture.

*Decree affirmed.*

(Decided 12th January, 1871.)