(Decided 14th April, 1881.)

SOPHIA C. REED, ANN W. HOWARD, M. G. HOWARD, and others *vs.* CHARLES F. STOUFFER, and others.

*Sale of a Burial ground under the Act of* 1864, *ch.* 211— *What must be shown to authorize such Sale—Case where such Sale was held not to be Necessary—Such Sale not permitted where it would Divert the lot from the Uses expressed in the Deed of grant—Rights of the Heirs of the Grantor in case of such Diversion—Right of a Religious Society, when Incorporated, under Art.* 40, *secs.* 157 *to* 168, *of the Revised Code, to a Conveyance of ground previously conveyed to Trustees for the use of said Society.*

On the 17th of November, 1808, a lot of ground in the City of Baltimore, was conveyed by deed to trustees, upon the trust, that it should " at all times thereafter be used as a burial ground or place of deposit for the remains of the members of the Society of German Baptists, commonly called Dunkers, and such other persons as a majority of the trustees, residing," &c., " might think proper to give permission to be buried therein; and that any house erected, or to be erected thereon, should, and might at all times be

Reed, Howard, *et al.* *vs.* Stouffer, *et al.*

used as a place of public or private worship for the said Society, or such other persons as a majority of the trustees aforesaid, residing," &c., "should think proper." In November, 1874, a certificate of incorporation, alleged to be of the Society of Baptists referred to, and described in said deed, was acknowledged and recorded under the General Incorporation Act of 1868, ch. 471. On a bill afterwards filed for the sale of the lot on the ground that it had become unsuitable for burial purposes, and that it was necessary, and would be for the interest and advantage of all the parties interested therein that it be sold, it was HELD:

That before a decree for a sale of a burial ground under the Act of 1868, ch. 211, the proof must be sufficient to satisfy the Court that such sale is *necessary,* as well as for the interest and advantage of the parties interested in the place of burial.

The lot was enclosed within walls, and was proved to be kept in proper condition. No cause was shown why it was not a suitable place for the burial of the dead, except what was assigned by two witnesses, living in its immediate vicinity, one of whom thought it stood in the way of the improvement of his own property, and the other of whom wished its removal because the sight of it from his chamber window produced disagreeable feelings. HELD:

1st. That such facts did not constitute such unsuitableness for a place of burial, and such necessity for its removal as were contemplated by the law; and were not sufficient to warrant a sale of it, even for the purpose of investing the proceeds of the sale in other ground, to be held and used as a burial ground.

2nd. That in no event had the trustees named in the deed of 1808, their heirs and assigns, or the body corporate formed in 1874, or their successors, any right to have the lot in question sold, and the proceeds of such sale distributed among themselves, or their *cestuis que trust.*

3rd. That neither the parties to it, their heirs, the *cestuis que trust,* nor the lot-holders, had any right to divert the lot from the uses expressly declared in that deed.

4th. That the fact that a valuable consideration was paid for the grant could make no difference.

5th. That the lot must be held and used in strict conformity to the terms of the deed by which it was conveyed, and for the uses therein specially declared. Should it be diverted from those uses, the terms of the deed under which alone it was held, would be

violated, and the heirs of the grantor would immediately become re-invested with the title to the lot.

The corporation formed in 1874, filed a bill, which was consolidated with the proceedings for the sale of said lot, alleging that the persons so incorporated were the *cestuis que trust* for whom the lot was purchased and held in trust, and asking for a conveyance of the legal title to said lot from the heirs of the trustees to whom it was conveyed by the deed of 1808. The proof showed that said corporation was composed of German Baptists, commonly called Dunkers, and that they were the same persons for whose use the lot was conveyed to trustees by said deed, and that they were duly and legally incorporated according to the requirements of the Rev. Code, Art. 40, secs. 157 to 168 inclusive. HELD :.

That the corporation was therefore entitled to a conveyance of the lot in question, to be held by it, however, subject to the uses declared by the deed of 1808.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON, and IRVING, J.

*McHenry Howard* and *Severn Teackle Wallis,* for the appellants.

The complainants, the alleged *cestuis que trust,* were incapable of taking when the deed of 1808 was executed, not being a body corporte, and no subsequent incorporation could give them capacity to take. *State, use of Trustees, &c. vs. Warren,* 28 *Md.,* 354 ; *Dashiell vs. Attorney-General,* 5 *H. & J.,* 392, and 6 *H. & J.,* 1.

At most, there has been, therefore, only a dedication of the property for pious uses, and on an abandonment of the use, it will revert. *Beatty & Ritchie vs. Kurtz,* 2 *Peters,* 582.

Under no circumstances could these parties take more than the estate, and for the purposes allowed by the

Declaration of Rights of 1776, (Art. 34.) The convey-
ance of 1808 would have been void if it had assumed to
grant more, and would have been avoided if the property
had been used or enjoyed for any other purpose. By the
avoidance of the deed the grantor and his heirs would
have been in of their original estate, and the same result
will flow from a like misapplication of the property now.

The deed would have been void if it had given in terms
to the grantors what they now claim. *State, use of Trus-
tees, &c. vs. Warren,* 28 *Md,* 354; *Murphy vs. Dallam,* 1
*Bland,* 529; *Grove vs. Trustees, &c.,* 33 *Md.,* 454.

The Legislature would have had no power, if it had
intended to do so by the Graveyard Act of 1868, ch. 211,
(*Revised Code,* 654,) to divest the rights of Howard's
heirs, created by and existing under the deed of 1808,
and the constitutional provisions thereon operative. *Grove
vs. Todd,* 41 *Md.,* 633.

But the Graveyard Act was not intended to act as a
legislative assent to unlawful holdings by corporations of
a religious character, or to divest vested rights. *Partridge
vs. First Ind. Church,* 39 *Md.,* 636; *Grove vs. Trustees,
&c.,* 33 *Md.,* 451.

The express reservation of the Court there, was that
the church held the land subject to no trust. And the
Act itself authorizes the passage of no title save that of
the corporation and lot-holders. So the corporate Act of
1868, ch. 471, (*Revised Code,* 346, *sec.* 158,) under which
this bill of the trustees of the Church, &c. is filed, for-
bids any sale, &c., prohibited by the grant.

In this State, the wide *cy-pres* chancery powers exer-
cised in England, and claimed in the case in 5 *Wallace,*
119, do not exist. *Prov. of Dumfries vs. Abercrombie,* 46
*Md.,* 179–189.

Resulting uses of the class here arising, (if it be neces-
sary to apply that doctrine,) are described and defined in
2 *Blackstone's Comm.,* 335. And where no use is granted

as to part of the inheritance, or any part becomes discharged of the use, the right of the grantor or his heirs comes in. It is not a case of a condition forfeiting a granted estate, but of a limitation in trust excluding other uses which are not only not granted, but forbidden. *Stanley vs. Colt,* 5 *Wallace,* 119; 2 *Story's Eq. Jurisprudence, secs.* 1196a, 1197, 1199, 1200; *Fonblanque's Equity, Book* 11, *ch. V., sec. IV.*

The deed of 1808 recites and declares an express intention on the part of the grantor in creating the estate, (as well as the intention of the grantees in taking,) to part with the use of the property for the particular purposes set forth, and none other. Not only is no other intention expressed or implied, but every other is excluded. The intention of the parties to a deed is to be accomplished, unless there are expressions in the deed which positively forbid it. *Peyton vs. Ayres,* 2 *Md. Ch.,* 64; *Hope vs. Hutchins,* 9 *G. & J.,* 77.

It makes no difference that there was a valuable consideration for the grant. It cannot be shown that the money consideration was a full price for the ground; the presumption may, rather, be that a less price was received on account of the particular use of the property, (and there were "other good causes" for the deed of 1787.) At any rate, the estate intended to be conveyed, and granted in express and exclusive terms, cannot be enlarged by any argument based on the consideration. Where some use is declared, it is correspondent to the consideration. Certainly, at all events, there can be no inference from any amount of consideration that the grantor intended to create an estate which the grantee was expressly forbidden by the fundamental law from taking. 2 *Story's Eq. Jur.,* 1199, &c.

Nor does it make any difference that the terms of the granting part of the deed are as ample as in the case of a deed of an absolute estate. Even in the case of an un-

disputed grant on condition at common law, there is no difference in this respect in the form of the deed. And there was good and sufficient reason for the particular expressions employed in the deed of 1808, for, in the view and on the theory of the parties thereto, Col. Howard, then actually had only a reversion, subject to an estate for life in the first trustees ; hence, he conveys all his " right, title, interest, reversion," &c.

*W. Burns Trundle*, and *William A. Fisher*, for the Trustees of the Church of the German Baptist Brethren.

The restrictions upon the acquisition of land or other property by ecclesiastical bodies, to be found in the 34th section of the original Declaration of Rights, had no reference whatever to the interest of a vendor of the land, by creating a resulting trust in his favor by operation of law, though that might in some cases have resulted from a violation of its provisions; but they had their origin in the jealousy of the people toward such bodies, and were the outgrowth of the same policy which dictated the statutes of Mortmain in England. But our ancestors, in their wisdom, saw proper to entrust the whole subject, with its restrictions to legislative control.

This, then, being the true intent and meaning of the 34th section of the Bill of Rights, the claim of the appellants, in so far as it is based upon the provisions of that instrument, is groundless.

But it is urged that by the terms, affirmative and negative, of the deed of 1808, a limited trust is impressed upon the land, any departure from the terms of which, will cause it to revert to the appellants, by way of *resulting trust*.

It is not pretended that the deed contains any *condition* annexed to the grant, for breach of which it would revert to the heirs of Howard, as at common law ; nor could any such theory be sustained. If the deed contained such a

condition, then upon breach thereof, the heirs of the grantor would, by operation of law, be in as of his former estate, without reference to the fact that in the interim between the date of the deed and the breach of the condition, the land had been used as a place of interment of the dead; and this never intended result would follow, that the appellants would be at liberty to apply it to whatever uses they might see fit, without making any provision for the removal of the remains of those who lie buried there—some of them, perhaps, the very persons who contributed their money to buy the land from appellant's ancestor. Now such a consequence could never have been in the contemplation of the parties at the time of the purchase. In the deed there is no limitation over, as for breach of condition subsequent, nor does it contain any terms, of which such a condition can legally be predicated.

Clear and positive words are necessary to create a condition subsequent; and says *Lord St. Leonards,* in his work on *Powers,* (1 *Sugden on Powers,* 123, 7th *London Ed.,*) " what by the old law was deemed a devise upon condition, would now, perhaps, in almost every case, be construed a devise in fee upon trust, and, by this construction, instead of the heir taking advantage of the condition broken, the *cestui que trust* can compel an observance of the trust by a suit in equity."

This language is cited and approved by the Supreme Court, in *Stanley vs. Colt,* 5 *Wall.,* 165. See also *Martidale vs. Martin, Cro. Eliz.,* 288; *Cook vs. Trimble,* 9 *Watts,* 16; *Wright vs. Linn,* 9 *Barr.,* 433–440.

It is conceded that by the deed of 1808, a fee simple is vested in the trustees therein named, in trust, for the German Baptists, for a burial ground, with a discretionary power in the trustees, or a majority of them residing in the city and precincts of Baltimore, to *permit* others to be buried there; that the trust is, in its nature, a limited

one. But it by no means follows, that if a Court of equity, with a view to promote the interest of the trust, has not thought it necessary to preserve the property *in specie,* but has sanctioned its alienation, that the land must revert to the grantor and his heirs by way of a resulting trust. On the contrary, it is entirely competent for the Court to direct a sale of the specific trust property and order a re-investment of the proceeds. (5 *Wall.*, 169.) In this, the Court will see to it, that the interest of the *cestuis que trust* are protected ; but neither in the sale nor in the re-investment, have the heirs of the original vendor any, the slightest interest.

A resulting trust arises only by construction of law ; and it is well settled that where land is bargained and sold, for valuable consideration, there is no resulting trust to the grantor, or his heirs, in any case. *Gibson vs. Armstrong,* 7 *B. Monroe,* 488, 490, (1*st proposition ;) Kerlin vs. Campbell,* 15 *Penn. St.*, 500 ; *Brown vs Jones,* 1 *Atkyns,* 188–191 ; *Rathbun vs. Rathbun,* 6 *Barbour,* (*N. Y.,*) 107 ; *Showman vs. Miller, et al.,* 6 *Md.,* 479–486 ; *Graves vs. Graves,* 29 *N. Hamp.,* 129, 141-5 ; *Farmington vs. Barr,* 36 *N. H.,* 86–88 ; *Hogan vs. Jacques,* 4 *C. E. Green,* (*N. J.,*) 123, 126 ; *Philbrook vs. Delano,* 29 *Maine,* 410, 413 ; 1 *Perry on Trusts,* 151, 158 ; *Hill on Trustees,* 112, 114 ; 12 *Am. Law Reg.,* 348, 361, 546 ; 13 *Am. Law Reg.,* 75 ; 2 *Sugden on Vendors and Purchasers,* 645, 702, see. 11, ($q^1$ ;) 2 *Story's Equity Juris.,* 1197, 1199 ; *Tiffnay & Bullard on Trusts,* 22--41 ; 21 *Viner's Abridgment,* 498, 499.

A resulting trust is a mere creature of equity, as a resulting use is of law ; and it cannot, therefore, arise where there is an express trust declared by the parties, and evidenced by a written declaration of such express trust. *Leggett vs. Dubois,* 5 *Paige,* 117 ; *Alexander vs. Warranee,* 17 *Mo.,* 230 ; *Mercer vs. Stark,* 1 *Smedes & Mar.,* ch. 479--488.

There is a distinction between a deed of *gift,* where the use is presumed to be the consideration which induced the

donor to make the gift, and a deed of *bargain and sale.*
In the former case, there may be a resulting trust upon
cesser of the use ; in the latter, there is not.   1 *Cruise on
Real Property, Title XII, ch.* 1, *sec.* 53.   In the latter,
the inducement to the vendor to make the deed, is the
*money paid,* and not the use.   In this case it is apparent
that the second use expressed in the deed, *i. e.* for a burial
ground, &c., is set forth for a special purpose, viz., to meet
the requirements of the 34th section of the Bill of Rights.
The deed must be read in the light of that instrument.
And this is the more strikingly shown, when it is remem-
bered that the first deed, of 1787, which appears to have
been drawn when the parties were *inopes concilii,* was
void for the very reason that it failed to conform to the
requirements of said 34th section, while the second deed,
that of 1808, which seems to have been advisedly drawn,
was made to comply with those requirements.

The positive and negative terms in which the trust is
expressed in the deed, present, then, no difficulty ; they
comply with the law ; they go no further ; had the trust
been less explicit, it had failed to meet the very exact-
ing language of said 34th section.

" Modern deeds taking effect under the statute of uses,
or under statutes prescribing their pre-requisites, do not
create resulting trusts, and no trusts can be fastened upon
them, unless proved in writing in favor of the grantor." 2
*Story Eq. Juris., sec.* 1197, note 2 ; *Jackson vs. Cleveland,* 15
*Mich.,* 94, 103 ; *Bartlett vs. Barlett,* 14 *Gray,* 277 ; *Titcomb
vs. Morrill,* 10 *Allen,* 15 ; *Gerry vs. Stinson,* 60 *Me.,* 186.

There is this principle running through all the cases,
namely, that a resulting trust can never arise, contrary
to the *intention* of the parties, either as expressed upon the
face of the deed or other instrument, or as legally inferri-
ble from the language used.   By the explicit and une-
quivocal terms of the deed of 1808, " *doth grant, bargain,
sell, release and confirm unto the said A. K.*   *   *   *   *their*

*heirs and assigns, all the right, title, interest, reversion, prop-*
*erty, claim and demand, and all estate at law and in equity*
*which he, the said John Eager Howard, hath or can claim,*
*in and to the said lots or parcels of ground and every part*
*thereof. To have and to hold * * * forever,"* any
such intention is emphatically negatived. *Van der Volgen*
*vs. Yates,* 5 *Selden,* 219, (221, 227.)

The German Baptists of Pipe Creek Church are the ·
true beneficiaries under the deed. The language of the
trust must be interpreted to include, not all the German
Baptists in existence, but only that particular church or
congregation embracing within its territorial limits the
City of Baltimore. *Gibson vs. Armstrong,* 7 *B. Monroe,*
481, 488, 489, 490.

The terms of the trust are not too vague or indefinite.
*Beatty vs. Kurtz,* 2 *Peters,* 566, 583 ; *Smith vs. Thompson,*
55 *Md.,* 5 ; *Grove vs. Trustees of the Disciples, &c.,* 33
*Md.,* 451.

The trust then, by legal intendment, being limited to
this particular Church of German Baptists ; and no other
church, in fact, making any claim, all the other churches
of that faith conceding the right of Pipe Creek Church,
to the benefits of the trust as shown by the record, it fol-
lows that the German Baptists of that congregation are
the *only cestuis que trust* under the deed. As to the lan-
guage of the deed with reference to such other persons as
a majority of the trustees * * * might *permit* to be
buried there ; here is no trust, which any one has a stand-
ing in a Court of equity to enforce. The exercise of the
power rests entirely in the *discretion* of the trustees. As
to those in whose favor it *has been* exercised, by selling
them the privilege of interment, their rights are ascer-
tained, as well as those of all other lot-holders who are
parties to this cause, by the case of *Partridge vs. The*
*First Independent Church,* 39 *Md.,* 631.

No one else, outside of said congregation, has the right
to complain of the partial exercise of that discretion. To

no German Baptists of Pipe Creek Church can the trustees named in the deed, or their heirs, deny the right of sepulture ; to all others the gates are locked, and can only be opened when the trustees see fit to open them.

The power of the Court of Chancery in the premises, is conclusively established by the case of *Stanly vs. Colt*, 5 *Wall.*, 169. See also *Attorney-General vs. South Sea Co.*, 4 *Beavan*, 458 ; 1 *Cruise on Real Prop.*, *T. XII*, ch. 1, " *Trusts*," sec. 91 ; *Callis vs. Ridout*, 7 *G. & J.*, 6 ; *Keighler's Case*, 27 *Md.*, 574 ; 1 *Spence Eq. Juris. of Court of Chancery*, 876, (*mar.*) ; *Shelford on Mortmain*, 687–8.

The trust property being therefore no longer suitable for the purposes of the trust, and it being for the interest and advantage of all parties in interest, *cestuis que trust* and lot-holders, that the specific property should be sold, and the proceeds of sale re-invested upon the same trusts ; and the Court, both *proprio vigore*, and under the statute, having jurisdiction to order such sale and superintend said trust, and the appellants being strangers to the whole subject-matter, and having no interest therein ; and their conduct in setting up such claim being calculated to throw a cloud upon the title of the purchaser at such sale; it follows, that the decree of the Court below should be affirmed. *Van der Volgen vs. Yates*, 3 *Barb. Ch.*, 242, per GRIDLEY, V. C., affirmed by Chancellor WALWORTH, on appeal, pages 290 to 293, re-affirmed on appeal, 5 *Selden*, 219, opinion by RUGGLES, C. J. ; *Ward vs. Sudman, Moore*, 684.

*John P. Poe*, and *Bradley T. Johnson*, for Charles F. Stouffer, *et al.*

The Court had the right to order the sale of the lot. *Partridge, et al. vs. First Independent Church of Baltimore*, 39 *Md.*, 631.

The deed of Howard of 1808, has been decided to be valid, and that of 1787, to have been void. *Grove vs. Trustees of the Disciples*, 33 *Md.*, 451.

The trustees, under the deed of 1808, cannot be removed, except for breach of trust. The discretion is vested in them to determine who shall use the lot for worship, and who, in addition to the Society of German Baptists shall use it for burial. They can allow anybody or nobody to use it for these purposes. Their discretion is not reviewable by a Court of Chancery. *Morice vs. The Bishop of Durham,* 10 *Vesey,* 521.

The Legislature cannot substitute one set of trustees for another set. The supervision of the execution of a trust, is an exercise of the judicial power which the Legislature cannot perform. *Cooley's Const. Lim.,* 105, and cases cited.

Section 168, of Article 40, Revised Code, enacts, that persons holding property in trust for any particular Church, shall convey the same to the corporation of such particular Church, as soon as the same shall be formed under this Article; in other words, it directs that A, holding Blackacre, shall forthwith convey it to B. This is beyond legislative power.

The grant by Howard in the deed of 1808, vests in the grantees the power to use the fund in their discretion, subject to the limitations of the deed. This power cannot be interfered with. *Stanley vs. Colt,* 5 *Wall.,* 119.

GRASON, J., delivered the opinion of the Court.

It appears from the record of this case, that in the year 1787, John Eager Howard, in consideration of £100 specie, executed a deed of conveyance of a lot, at the corner of Lombard and Paca streets, in Baltimore City, to Abram Sitler and others, and their successors, as "trustees for the Society of German Baptists, commonly called Dunkers, to and for the use and behoof of the said German Baptist Society forever." On the 17th day of November, 1808, John Eager Howard executed another deed of the same lot to trustees, some of whom are named as trustees in the deed of 1787, and others are different per-

sons.   The last deed recites parts of the first deed, and states that it vested only a life estate in the trustees, by reason of the omission of legal words of perpetuity, whereas, it was the intention of said Howard, that the said lot of ground should at all times thereafter be used as a burial ground or place of deposit for the remains of the members of the Society of German Baptists, commonly called "Dunkers," and such other persons, as a majority of the trustees, residing in Baltimore City or precincts, might think proper, and give permission to be buried therein; and that any house erected, or to be erected thereon, should and might, at all times, be used as a place of public or private worship for the said Society, or such other persons, as a majority of the trustees aforesaid, residing in the city and precincts of Baltimore, should think proper; and in pursuance of such intention, and to give full effect to the original grant, he conveys, for the consideration named in the first deed, the lot to the trustees, named in the second deed, their heirs and assigns, to have and to hold, &c., to them and the male heirs of their bodies, severally and lawfully begotten, and to their proper use as tenants in common, and, in the event of no male heirs, to their heirs generally, forever.   "In trust, nevertheless, and to and for the uses, intents and purposes hereinbefore mentioned, and to and for no other use, intent or purpose whatever."   In 1849, John Stouffer, said to be the only surviving trustee, and some of the heirs-at-law of the deceased trustees, named in the deed of 1808, executed a deed of license to the "Trustees of the Disciples of Jesus Christ, in the city and precincts of Baltimore," to erect a house of public worship, on a part of said lot.   The house was built, and a dispute arose between the two religious societies as to the exclusive right to worship therein, and a suit was instituted and was brought to this Court, in which it was decided that the license was valid and binding upon the parties; that the deed of Howard, executed

in 1787, was in direct violation of the 34th Article of the Declaration of Rights, and therefore void, and that his deed of 1808, was the first valid and effective grant. *Grove vs. Trustees, &c.,* 33 *Md.,* 451. On the ninth day of November, 1874, a certificate of incorporation, alleged to be of the Society of Baptists referred to and described in the deed of 1808, was acknowledged and recorded under the general incorporation Act of 1868, ch. 471, and on the third day of December, 1874, the " Trustees of the Church of the German Baptist Brethren " thus incorporated, filed a bill in the Circuit Court of Baltimore City, alleging that they were the *cestuis que trust,* for whom the lot was purchased and held in trust, and that, having become incorporated, they were entitled under the Act of 1868, ch. 471, to have a conveyance of the legal title of the lot, for which the bill prays, and for general relief.

Answers were filed by some of the heirs of the trustees named in the deed of 1808, in which it is denied that the complainants were beneficiaries under that deed, or in any manner entitled to the lot thereby conveyed. In January, 1875, Charles F. and George T. Stouffer, heirs of trustees under that deed, filed their bill in the same Court, in which they allege that in consequence of the growth of the city, the lot has become unsuitable for burial purposes, and that it is necessary and would be for the interest and advantage of all 'the parties interested therein, that said burial ground should be sold, and the proceeds distributed amongst them, the remains therein interred, being first carefully removed. The Trustees of the Church of the German Baptist Brethren answered, insisting on their right to have a conveyance of the lot, and denying that the complainants, the heirs of the original trustees, had any beneficial interest in the lot, or any right to have it sold, or to receive the proceeds thereof; but the answer does not notice, in any manner, the allegation in the bill, that the lot was no longer suitable for a burial place. Answers

were also filed by some of the heirs of the original trustees under the deed, and by lot-holders assenting to a sale of the lot and distribution of the proceeds of sale. An interlocutory decree was passed against those who had not answered, and afterwards evidence was taken as to the identity of the Society of German Baptist Brethren, with the Society of German Baptists, called "Dunkers," and its acts of ownership and user of the lot, and its being no longer suitable as a burial place. The two cases were consolidated, and, on the 23rd day of October, 1877, an agreement of the parties was filed, consenting to a sale of the lot, and that the proceeds should be brought into Court, and held subject to the further order of the Court, the right being reserved to the parties to share in the distribution of the fund, and all their rights against the same, as they had against the land itself; and a decree was passed accordingly. Some time afterwards, this decree was rescinded by agreement of the parties to the cause, and an amended bill was filed, alleging that the trustees were notified by the heirs of John Eager Howard, that, in case the property should be diverted from its use as a burial ground, by a sale thereof, they would claim the same, and further alleging that the heirs of Howard have no interest in the property, but that by the true interpretation of the deed of 1808, the title of the grantees was not made to depend on the continued user of said property as a burial ground, but, as the claim of said heirs has thrown a cloud on the title, which would seriously affect its sale, they ask that they be brought in as defendants, and be enjoined from setting up any claim or title to the property; and be declared to have no right, title, interest or estate therein. The Trustees of the Church of the German Baptist Brethren answered the amended bill, in which they also deny that the heirs of John Eager Howard have any interest in the property, or any right to object to or call in question their rights as asserted in

their original bill or their answer to the bill filed by the Stouffers. The heirs of Howard answered, setting forth their views of the proper construction of the deed of 1808, and the uses to which the property conveyed thereby was to be applied, and the interest which the complainants took therein. The cause was argued, and the Circuit Court decided that the decree for a sale of the property had been rightfully passed, and that a purchaser under that decree would take a valid title. Another decree. was passed for a sale, reserving the question of the distribution of the proceeds of sale for the future orders of the Court; and from this decree the heirs of John Eager Howard have taken this appeal, and the main question presented is, whether the property can be sold, or whether it must continue to be held as a place of burial of deceased members of the Society of German Baptists, and of such others as a majority .of the trustees of that denomination of Christians, being and residing in Baltimore City or precincts, may think proper and give permission to be buried there?

It has been contended by the appellees' counsel, that the decree for the sale was rightfully passed by virtue of the Act of 1868, ch. 211. That Act provides that after notice is given as directed by it, and evidence taken, the Court may decree a sale upon being satisfied by the evidence that it is necessary, and would· be to the interest and advantage of the parties interested, that the ground should be sold, and shall distribute the .proceeds of sale among the parties interested, according to their several interests, as the same shall be shown to the Court, and that a sale under such decree shall pass the title to the purchaser thereof, free and discharged of, and from the corporation or trustees who may hold the same, their successor and assigns, and of all persons in interest as lot-holders in such ground, whether they are entitled as·original lot-holders, and whether they are residents or non-

residents, adults or infants.   Before a decree for a sale
can be passed under this Act, the proof must be sufficient
to satisfy the Court that such sale is *necessary*, as well as
for the interest and advantage of the parties interested in
the place of burial.   Only two witnesses were examined
as to this point, Samuel Beavan and Edward D. Pollitt,
who both testified, that in their judgment, it would be for
the interest and advantage of the parties interested, that
the lot should be sold.   Neither of them however testified
that it was *necessary* to have it sold, nor was either of
them asked any question with respect to the necessity for
its being sold.   Mr. Beavan owned property on the oppo-
site corner, and Mr. Pollitt lived opposite, and it very
clearly appears from their evidence, that they are both
much opposed to having any grave-yard within the city
limits, because in their opinion, they stand in the way of
business improvements, and they think that that portion
of the city, in which the grave-yard is located, would be
much benefited by its removal ; and Pollitt seems anxious
to have it removed, because his chamber window looks
directly into it, and he says it is very unpleasant to look
into a grave-yard.   The proof also shows that this lot has a
wall around it, and is kept in a snug and clean condition,
and that in the last twenty-five years there have been but
four persons buried there, and not more than fifty or sixty
since it was deeded by General Howard for that purpose.
We are clearly of opinion that the proof does not come
up to the requirements of the Act of 1868, so as to justify
a decree for a sale of the lot under its provisions.   We
can find nothing in the proof to show that the lot in
question is not a suitable place for the burial of the dead.
Not many have been interred in it, owing, we infer, not
to the fact that the lot is unsuited for the burial of the
dead, but solely to the fact of the paucity of members of
the society for whose use the lot was conveyed by General
Howard.   There is still ample room for the burial of such

of the German Baptists, called Dunkers, as may die, and likely to be for a long time to come. The lot is enclosed within walls, and is proved to be kept in proper condition, and no cause is shown why it is not a suitable place for burial of the dead, except what is assigned by two witnesses, both of whom live in its immediate vicinity, one of whom thinks it stands in the way of the improvement of his own property, and the other of whom wishes it removed, because a sight of it from his chamber window produces disagreeable feelings. Such facts do not constitute such unsuitableness for a place of burial, and such necessity for its removal as are contemplated by the law, and are not sufficient to warrant a sale of it, even for the purpose of investing the proceeds of the sale in other ground, to be held and used as a burial ground. But in no event have the trustees, named in the deed of 1808, their heirs and assigns, or the "Trustees of the Church of the German Baptist Brethren," or their successors, any right to have the lot in question sold, and the proceeds of such sale distributed among themselves, or their *cestuis que trust.* The deed of 1808 in express terms declares the intention of the grantor, in creating the estate, to part with the use of the property conveyed, for the particular purposes set forth in the deed, and for no other purpose, and the grantees by their acceptance of that deed, are bound by that intention. The intention of the parties to a deed is to be carried into effect and accomplished, unless other expressions in the deed positively forbid it. *Peyton vs. Ayres,* 2 *Md. Ch. Dec.,* 64 ; or unless that intention violates some established principle of law. *Hope, Adm'r of Hope vs. Hutchins,* 9 *G. & J.,* 78. By the express terms of the deed, it was the intention of the parties to it, to dedicate the lot conveyed to the uses therein specially declared; and neither they, their heirs, the *cestuis que trust,* nor the lot-holders, have any right to divert it from those uses. The fact that a valuable

consideration was paid for the grant can make no differ-
ence. The estate conveyed and granted in express and
exclusive terms, cannot be enlarged by the amount of the
consideration paid. Where uses are declared, they are to
be held as correspondent to the consideration. *Fonblan-
que's Equity, Book* 11, *sec.* 4, *note m,* and the authorities there
cited. And it certainly cannot be inferred from the
amount of the consideration paid, that the grantor in-
tended to convey an estate, which the grantees were
expressly prohibited by the 34th Article of the Declara-
tion of Rights from taking ; that Article declaring void
all gifts and conveyances of land to religious societies,
except not exceeding two acres on which to erect a build-
ing for divine worship, or to be used as a place of burial
for the dead. It is manifest that neither the original
trustees named in the deed of 1808, nor their heirs, nor
the lot-holders have any right to have the lot sold, and
the proceeds of the sale distributed among them or any of
them. It must be held and used in strict conformity to
the terms of the deed by which it was conveyed, and for
the uses therein specially declared. Should it be diverted
from those uses, the terms of the deed, under which alone
it is now held, would be violated, and the heirs of Gene-
ral Howard would immediately become re-invested with
the title to the lot.

The only remaining question to be disposed of, is
whether " The Trustees of the Church of the German
Baptist Brethren," have a right to a conveyance of the
lot in question from the heirs of the trustees, to whom it
was conveyed by the deed of 1808. Their bill was filed
for the purpose of compelling such conveyance. Article
40, sec. 168, of the Revised Code enacts, that " the per-
son or persons holding lands or goods and chattels in trust
for any particular church or society, shall convey the same
to the corporation of such particular church or society,
as soon as the same shall be formed under this Article."

The proof shows that the "Trustees of the Church of the German Baptist Brethren," is composed of German Baptists, commonly called "Dunkers," and that they are the same parties for whose use the lot was conveyed to trustees by the deed of 1808. The proof further shows that they acknowledged a certificate of incorporation, by the name of the "Trustees of the Church of the German Baptist Brethren," before a Judge of the Circuit Court for Carroll County, on the ninth day of November, 1874, and that it was duly recorded in the office of the clerk of said Court. In effecting this incorporation, the requirements of the Revised Code, Article 40, secs. 157 to 168 inclusive, seem to have been substantially complied with, and the society has therefore been duly and legally incorporated. The corporation is therefore entitled to a conveyance of the lot in question, to be held by it, however, *subject to the uses declared by the deed of* 1808. We will therefore pass a decree, reversing the decree appealed from, and remanding the cause in order that a decree may be passed by the Court below, in conformity to the views expressed in this opinion.

*Decree reversed, and*
*cause remanded.*

(Decided 6th May, 1881.)