# THE REGENTS OF THE UNIVERSITY OF MARYLAND *vs.* THE TRUSTEES OF THE CALVARY METHODIST EPISCOPAL CHURCH, SOUTH,

*Religious Societies—Conveyance of Land—Sanction of Legislature— Adverse Possession Under Void Deed—Marketable Title.*

When a conveyance of land to trustees of a church is void, because not sanctioned by the Legislature as is required by Declaration of Rights, Art. 38, the entry into possession by the grantee, and the continuance of such possession for twenty years, perfects the title of the grantee against all persons not under legal disabilities.

Declaration of Rights, Art. 38, provides that any sale of land to any religious sect without the prior or subsequent sanction of the Legislature shall be void, except a sale of land not exceeding five acres for a church, parsonage or burying ground. A lot of ground containing less than five acres was conveyed to a church in 1881 by a deed containing a clause of reverter if it should be diverted from the uses of the M. E. Church, but the deed did not express that the land was to be used for a church, parsonage or burying ground. No previous or subsequent sanction of the Legislature was given to the grant. The church entered into possession and so remained until 1906, when it contracted to sell the lot to the defendant, who alleged that the title thereof was not marketable. Upon a bill for specific performance, *held*, that the deed of 1881 is void, because it is a conveyance to a religious sect without the sanction of the Legislature, and although it conveys less than five acres, it does not declare that the land shall be used only for a church, parsonage or burying ground.

*Held*, further, that since the deed is void, the reservations and limitations contained in it are likewise ineffective.

*Held*, further, that the entry upon the land by the church under the void deed constituted adverse possession, and the continuance of this possession for twenty years perfected the title of the church against all persons not under legal disabilities.

*Held*, further, that in 1901, the bar of the Statute of Limitations against the grantor in the deed, who was then living, became absolute, and the title of the church to the land is valid and such as the defendant should be required to accept.

A lot of ground, the title to which stood upon the land records in the name of A, was conveyed in 1881 by a third party, who had no record title thereto, but recited a grant from A, to a church by deed which was

void, because not sanctioned by the Legislature as is required by the Declaration of Rights. The church remained in possession until 1906, when the administrator of A conveyed the land to the church by a deed which did receive the sanction of the Legislature. *Held*, that the title of the church to the lot is valid as against those claiming under A, the owner of record, by virtue of the deed of 1906, and as against the grantor in the deed of 1881 by virtue of adverse possession for more than twenty years.

*Decided December 21st, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*S. Johnson Poe*, for the appellants.

*C. M. Armstrong*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

Under a Bill of Complaint filed by the Trustees of the Calvary Methodist Episcopal Church South against the Regents of the University of Maryland, in the Circuit Court of Baltimore City, the specific performance of a contract for the sale of certain leasehold property was sought. The execution of the contract was admitted and its terms are definite and clear. The purchaser, the University of Maryland, declined to pay the installments of purchase money now due, solely because of a supposed defect in the title of the vendor, the Trustees of the Calvary Church. The single inquiry in the case concerns the title of the vendor. That title as it now stands on the Land Records of Baltimore City is as follows : (1) A lease dated February second 1880 and duly recorded amongst said Land Records and made by Joseph O. Shipley to Levin Freeman. (2) A deed from Charles Shipley and Thomas J. Magruder to the Trustees of the Calvary Methodist Episcopal Church dated July 1st, 1881, in which deed it is recited that the parcel of ground is the same that was assigned by

Levin Freeman to said Charles Shipley and Thomas· J. Magruder as joint tenants by deed dated February the second, 1880, and left for record among the Land Records of Baltimore City prior to the execution of the deed of July 1st, 1881· (3) A deed from James E. Freeman, administrator of Levin Freeman, to the Trustees of Calvary Church, dated February fifth, 1906, which deed was sanctioned by *ch. 706* of the Acts of Assembly of 1906.   The deed from Shipley and Magruder to the Trustees of Calvary Church has never received the sanction of the Legislature.   No assignment from Levin Freeman to Charles Shipley and Thomas J. Magruder, as joint tenants, can be found among the Land Records of the City ; and neither any member of the respective families of said Shipley, Magruder and Levin Freeman, nor the present representatives of any of them have any knowledge of any conveyance by Levin Freeman of said leasehold property to Shipley and 'Magruder, or to any one, and no person can be found who has any knowledge that any conveyance of said leasehold property was ever executed except from the declaration in said deed that the property conveyed by it was the same·as that conveyed to said Shipley and Magruder, as joint tenants, by Levin Freeman.

There is a break in the chain of the record title.   There is no conveyance of record from Freeman to Shipley and Magruder, and if the latter acquired no title from Freeman they could assign none by the deed of July, 1881, to the Trustees of Calvary Church.    This last named deed though it conveyed no legal title because the grantors as disclosed by the records had none to convey, contained nevertheless, a recital that such a deed had been executed and delivered ; and that recital might be sufficient notice that such a deed did exist to put a purchaser on inquiry as to the rights of Shipley and Magruder, if the limitations in their deed of 1881 are effective and valid.    With that oustanding notice on the land records unqualified by the facts which evidenced an adverse possession, a purchaser could not be expected to admit ,that the deed from Freeman's administrator in 1906, assigned a title to the

trustees, which could not be questioned by the legal repre-
sentatives of Shipley or Magruder.    If on the other hand the
deed from Shipley and Magruder is void because it conflicts
with the organic law of the State, then its limitations are like-
wise nugatory, and though the grantee named therein entered
under it, that grantee—the Trustees of Calvary Church—may
have, in virtue of an adverse possession, a marketable title to
the property.    This brings us to an examination of the deed
of July, 1881.

By that deed for the consideration therein set forth Shipley
and Magruder on July first, 1881, granted and assigned unto
the Trustees of the Calvary Church, a religious body corporate,
chartered as such under the *Act of 1868, ch. 471,* the lot or
parcel of ground now involved in this controversy, "subject to
the payment of the annual rent" therein named; "to have and
to hold the said described lot   *   *   *   unto and to the use
of the Trustees of the Calvary Methodist Episcopal Church
South in the city of Baltimore, its successors and assigns
*   *   *.    It is hereby understood and provided that in case
said property should be diverted by any means whatsoever
from the uses and purposes of the Methodist Episcopal Church
South by said trustees, their successors or assigns, then it
shall be deemed forfeited and diverted and shall immediately
vest in the said Charles Shipley or his personal representatives
and held by him or them free, clear and discharged from all
incumbrances whatsoever except the leasehold interest now
thereout issuing."    Now, it will be observed that the deed
nowhere declares that the land is to be used for a "church
meeting-house, or other house of worship, or parsonage, or
for a burying ground."    It is quite apparent from the outlines
of the description that the quantity of land is less than five
acres.    No prior or subsequent sanction was given by the
General Assembly to this sale or grant.    Under these con-
ditions by the express terms of Article 38 of the Declaration
of Rights the deed is absolutely void.    That Article provides:
"That every   *   *   *   sale   *   *   *   of land to any
*   *   *   religious sect, order or denomination, or to or for

the support, use or benefit of  *  *  *  any religious sect, order or denomination, without the prior or subsequent sanction of the Legislature, shall be void; except always, any sale * * * of land, not exceeding five acres, for a church, meeting-house or other house of worship, or parsonage, or for a burying ground * * * or such sale shall be void." This provision of the Declaration of Rights was interpreted in *Grove et al.* v. *Trustees, &c.*, 33 Md. 451. It appeared in that case that John Eager Howard in 1787 conveyed a parcel of land—less than two acres—to trustees for the use of a religious society. The deed did not express that the land was "for a church, meeting, or other house of worship," or, "for a burying ground;" nor did it declare that the land should "be improved, enjoyed, or used only for such purposes ; and it was not averred or shown that there had been any assent of the Legislature to the grant. The society remained in possession of the land using it as a burying ground until 1808, when Mr. Howard made another deed conveying the same property to other trustees for the use of the same religious society, and defining more accurately the purposes of the trust. It was held by the Court (first) that the deed of 1787 was in contravention of the 34th Article of the Declaration of Rights then in force and was consequently void—the same Article being designated as 38 in the present Declaration of Rights. (Secondly), that the original grantor had the right to treat the deed of 1787 as defective and void and to execute the deed of 1808, which, therefore, became the first valid and effective grant. In the course of the judgment delivered through JUDGE MILLER it was said of the deed of 1787: "Upon its face this deed is in direct contravention of the 34th Article of the then Declaration of Rights. It is a conveyance of land in trust for a religious sect, order or denomination, and though not exceeding two acres, yet the deed does not express that it is for a church, meeting, or other house of worship or for a burying ground, nor does it declare that the land shall be improved, enjoyed or used only for such purposes. No assent of the Legislature thereto is averred, nor does any such

assent appear ever to have been given.    Such a conveyance
the Article referred to declares shall be void, and the Courts
have uniformly enforced like provisions in all the Declarations
of  Rights  under  the  several  Constitutions  of  the  State
*   *   *   That being the law as to the validity of this convey-
ance, the original grantor, in our opinion, had the right to treat
it as defective and void, and to execute the deed of the 17th
of November, 1808, which, therefore, became the first valid
and effective grant, and must operate as such, and not as a
mere affirmance of the deed of 1787."    Affirmed in *Trustees,
Zion Church* v. *Hilken*, 84 Md.  170.    It cannot be doubted,
then, that the deed from Shipley and Magruder is utterly void,
and it conveyed no title to the Trustees of Calvary Church.
If it was void the reservations and limitations contained in it
are  equally  ineffective  and  are  not  binding  on  the  trustees.
The deed being void every part of it falls.

The deed of July first, 1881, being void and all of its pro-
visions being consequently nugatory, what was the effect of
the entry under it by the trustees into possession of the prop-
erty?    That question has been answered in *Gump* v. *Sibley*, 79
Md. 165, and in *Trustees Zion Church* v. *Hilken*, 84 Md. 170.
In both of those cases it was held that although a conveyance
of property to trustees of a church be void because in con-
travention of the Declaration of Rights, yet entry by the
grantee into possession thereunder, and continuance of such
possession for twenty years perfected the title against all per-
sons not under legal disabilities.    In the first of the two cases
just above cited, this Court speaking through JUDGE BRYAN,
said: "If the decision in *Grove et al.* v. *Trustees of the Disciples,
&c.*. 33 Md. 451, is to be construed as establishing the right
of a grantor who had received full and valuable consideration
to vacate his deed, because it did not express on its face the
lawful purpose for which the property was bought, this right
vested in Jourdan (who was the grantor) as soon as he had
delivered the deed.    Consequently the Statute of Limitations
commenced running against him on that very day and has
been running for more than sixty years.    The deed even if

void, could not be less than *color of title*, and the entry under it would constitute adverse possession to the extent of the boundaries contained in it; and a continuance of this possession for twenty years would perfect the title against all persons not under legal disabilities." It is conceded that the grantee in the deed from Shipley and Magruder entered immediately upon the delivery of the deed into possession of the property described in that conveyance and has ever since held exclusive possession thereof. If Freeman ever executed and delivered to Shipley and Magruder the deed referred to by them in their conveyance to the Trustees of Calvary Church, Shipley and Magruder were joint tenants and upon the death of Magruder in 1892 whatever rights he then had in the property survived to Shipley. From the moment in 1881 that the trustees entered into possession of this property up until the death of Magruder in 1892 Shipley and Magruder as joint tenants could have instituted an action of ejectment for the recovery of possession since the deed of 1881 was wholly void. Upon the death of Magruder in 1892 Shipley as surviving joint tenant could have maintained an action of ejectment up until July the first, 1901, but on that date the bar of the Statute of Limitations became absolute. Shipley died in 1904. At the time of his death the statute presented an insuperable bar to his right to recover possession and all persons claiming under him or under Magruder are forever barred. The adverse and exclusive possession of the trustees for more than twenty years gives them a title which is good and marketable. The statute has long since become a complete bar to all pretentions derivable from whatever title Shipley and Magruder may have had. *Lurman and Fowler, Trustees,* v. *Hubner,* 75 Md. 272. This conclusion is reached after assuming that Freeman conveyed the property to Shipley and Magruder, though there is no evidence of such a conveyance save the recital in the deed from Shipley and Magruder to the trustees. Upon the basis of that assumption we hold the title of the trustees to be good. But suppose there never had been such a conveyance by Freeman to Shipley and Magruder and that

the recital of such a conveyance is erroneous; then the title of the trustees is equally unassailable.   And it is unassailable because if the title remained in Freeman, as it did until a deed executed by him was delivered and recorded, *Nickle* v. *Brown*, 75 Md. 172, then no title passed to Shipley and Magruder because no deed to them was ever recorded and the deed of February the fifth, 1906, from Freeman's administrator to the trustees, having been sanctioned by the General Assembly as previously mentioned, vested a perfect title in the trustees which they may convey to the purchaser.   In either of these two aspects of the case the title which the purchaser will secure will be free from imperfections.   Whatever notice of an outstanding title in Shipley and Magruder the recital in their deed to the trustees might impart to a purchaser, that notice can be of no avail as affecting the purchaser's title, since the adverse, continuous and exclusive possession by the trustees for more than twenty years, under the conditions named, completely and effectually bars any and all pretensions which the representatives of those parties might set up or assert.

We agree with the decision of the Circuit Court that the contract should be specifically enforced, because we have no doubt whatever that the purchaser will get a perfectly good title.   The decree appealed against will, therefore, be affirmed in all respects, including the requirement as to the payment of interest.

> *Decree affirmed with costs above and below.*