(Decided 14th March, 1894.)

## Moses B. Gump *vs.* Ansil H. Sibley.

*Construction of Conveyances—Burial ground—Adverse possession—Act of 1832, ch. 308—Act of 1868, ch. 211— Legislative power.*

The conveyance of a portion of a leasehold, described as bounding on an alley called " School House alley," carries the title of the sub-lessee to the middle of such alley, where the grantor owns to the centre of the alley, and there are no words or specific description to show a contrary intent, subject, however, to the easement of the right of way.

Although a conveyance of property to the trustees of a church, to be used as a burial ground, be void because it did not express on its face the purpose for which the property was bought, entry of the grantee into possession thereunder, and continuance of such possession for twenty years, perfects the title against all persons not under legal disabilities.

The Act of 1832, ch. 308, providing that the trustees of any Roman Catholic Church who hold the title to any lot used as a graveyard, may convey the same to the Archbishop of Baltimore and his successors, obviated any defect in the conveyance of such property to the trustees, arising from failure to specify therein the purpose for which the lot was to be used, although the Act did not specially mention such deed.

The Act of 1868, ch. 211, authorizing the sale of any ground used for the purpose of burial, enlarged the corporate powers granted to the Archbishop of Baltimore by the Act of 1832, ch.

308, and removed the restriction of that Act which required that the land should be used only as a burial ground, and enabled him to cause the title to be conveyed to a purchaser.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a *pro forma* decree of the lower Court (HARLAN, J.), which held that the plaintiff was entitled to the relief prayed; that the title to the lot of ground was good and marketable, and in fee simple, and that upon the tender by the plaintiff to the defendant of a deed in fee, in the usual form, duly executed by the plaintiff, and a release of the mortgage upon the property, the defendant was required and directed to pay to the plaintiff the sum of $6100, the purchase money for said property, with interest thereon, as set forth in the agreement between them for the sale and purchase of said property. From this decree the defendant appealed. The case is stated in the opinion of this Court.

The cause was submitted to ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, BOYD and BRISCOE, J.

*John H. Grill,* and *Harry C. Gaither,* for the appellant.

*George R. Willis,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

Ansil H. Sibley contracted to sell to Moses B. Gump certain real estate in the City of Baltimore. He filed a bill in equity for the specific performance of the contract, and by consent, the Court passed a *pro forma* decree commanding Gump to accept the property and pay for it. An appeal has been taken for the purpose of obtaining the opinion of this Court on the validity of the title to the property.

George Weller was possessed of a leasehold estate in twenty-three acres of land in the city of Baltimore, renewable forever.  He subleased in eighteen hundred and eight, four acres of this tract to John Hildt, and covenanted that this sublease should be renewable forever; in this sublease each party covenanted that he would keep open on the north side of the four acre lot, and adjoining it, one perch of his ground running from Ross street to Price street (now Madison avenue), so as to make a street thirty-three feet wide for the mutual benefit of themselves, their heirs and assigns.

In eighteen hundred and nine he subleased another portion of the said twenty-three acres to Frederick Jourdan, renewable forever.  This lot is described as beginning two perches north, forty-three degrees west from a corner of John Hildt's lot, and bounding on an alley called School House alley, which is the street thirty-three feet wide mentioned in the lease to John Hildt.  This was originally a private alley, and it does not appear ever to have been dedicated to the public; at all events it has been closed, and its site is now occupied by dwelling houses.  The controversy is about the title to the northwestern half of it; that is to say, the portion not embraced in the lease to Hildt. George Weller, by his last will and testament devised to Jourdan all his estate in the lot which he had leased to him; and the reversionary title in the twenty-three-acre tract is now vested in Sibley, the complainant below.  As we have said, the lease to Jourdan describes the lot as bounding on School House alley.  In *Peabody Heights Company vs. Sadtler*, 63 *Md.*, 533, the effect of such a description was considered.  All the Judges who heard the case adopted the views of Chancellor Kent on the subject.  He says: " The established inference of law is that a conveyance of land bounded on a public highway carries with it the fee to the centre of the road, as part and parcel of the grant.  The idea of an intention in the grantor to with-

hold his interest in a road to the middle of it, after parting with all of his right and title to the adjoining land, is never to be presumed. It would be contrary to universal practice; and it was said, in *Peck vs. Smith*, 1 *Conn.*, 103, that there was no instance where the fee of a highway, as distinct from the adjoining land, was ever retained by the vendor. It would require an express declaration, or something equivalent thereto, to sustain such an inference; and it may be considered as the general rule, that a grant of land bounded on a highway or river carries the fee in the highway or river to the centre of it, provided that the grantor at the time owned to the centre, and there be no words or specific description to show a contrary intent." A majority of the Court held that the rule did not apply in that particular case, because stones were placed by the parties at the side of the road as bounders, and the deed called for these bounders, and the lines ended at them; they therefore decided that the roadbed was excluded by literal and exact description. The same ruling was made in *Hunt vs. Brown*, 75 *Maryland*, 481. In this last case, after stating the general rule, it was said: " And, whatever may be the rule elsewhere, it is well settled in this State, that a grant of land by metes and bounds, and courses and distances, with calls for visible boundaries on the side of a highway; for instance, a call for a stone planted on the south side of a road, and running thence, by the south side of the road to another stone, these calls and boundaries will be construed as defining the limits of the property thereby conveyed; and the grantee under such a grant will not take the fee to the middle of the road. Such was the description of the property in the Peabody Heights Company case." In the present case there is nothing to prevent the operation of the general rule, and therefore Jourdan's title extended to the middle of School House alley, subject, of course, to the easement of the right of way over it. In 1833 Jourdan, for valuable consideration, conveyed a portion of

his lot in *fee simple* to the Trustees of St. John's German
Catholic Church of Baltimore, describing its boundaries ac-
cording to a plat annexed to the deed of conveyance, and
made a part of it. According to this plat the first line of
the lot bounds on School House alley, and there are no
calls in the deed for fixed objects, natural or artificial, to
mark the ends of the lines. Under the rule which we have
just cited, the title conveyed reaches to the middle of the
alley, subject to the right of way. The lot contained less
than two acres, and was purchased to be used, and was
used, as a burial ground. It is contended that the deed is
void under the thirty-fourth section of Declaration of Rights
of 1776, and that no title vested in the grantee, because
it was not stated upon the face of the conveyance that it
was to be used as a burial ground. The lot was purchased
for a lawful purpose, and was used for a lawful purpose.
If the decision in *Grove et al. vs. Trustees of the Disciples,*
*&c.,33 Maryland,*451,is to be construed as establishing the
right of a grantor who had received full and valuable con-
sideration, to vacate his deed, because it did not express
on its face the lawful purpose for which the property was
bought, this right vested in Jourdan as soon as he had de-
livered the deed. Consequently the Statute of Limitations
commenced running against him on that very day, and has
been running for more than sixty years. The deed, even if
void, could not be less than *color of title,* and the entry
under it would constitute adverse possession to the extent
of the boundaries contained in it; and a continuance of
this possession for twenty years would perfect the title
against all persons not under legal disabilities. *Hoye vs.*
*Swan's Lessee, 5 Md.,* 237; *Carter and Morrow, Trus-*
*tees et al. vs. Woolfork et al.,* 71 *Md.,* 283; *Lurman*
*and Fowler, Trustees vs. Hubner,* 75 *Md.,* 268. As
the Statute began to run against Jourdan in his lifetime,
it is not suspended by his death, nor by the supervention
of infancy, coverture or other disability; but it has become
a bar against all persons claiming under him.

In eighteen hundred and forty the trustees of St. John's Church conveyed this lot to "the Most Reverend Samuel Eccleston, Archbishop of Baltimore, and his successors in the Archiepiscopal See of Baltimore, according to the discipline and government of the Roman Catholic Church, forever, according to the provisions and for the uses, intent and purposes set forth in the Act of 1832, chapter 308." We have quoted the language of the conveyance. It is unnecessary to say anything more about this deed, than that it is in conformity with the Act of Assembly. It appears that a decree was passed by the Circuit Court of Baltimore City for the sale of this lot under proceedings in said Court by virtue of the Act of 1868 for the sale of burial grounds. The record of these proceedings is not set out in the transcript sent to this Court; but we understand the agreement of counsel to mean that they were regularly conducted in compliance with the statute. A deed was made in eighteen hundred and seventy-three to the purchaser by the trustee appointed to make the sale. The deed conveyed the burial ground, bounding one of its lines on School House lane, and in the granting part of it used these words: " Together with all interest—the bed of School House lane, and to any and all ground formerly used as part of said burial ground to which the parties owning said burial ground may have acquired title by possession or otherwise." The Act of 1832 provided that the trustees of any Roman Catholic Church who held the title to any lot on which a Roman Catholic Church was erected, or which was used as a graveyard attached to any such church, might convey the same to the Archbishop of Baltimore, and his successors, according to the discipline and government of the Roman Catholic Church forever; it also provided that the lot should not exceed two acres, and that it should be used only as a church lot, parsonage and burial ground; meaning, of course, that it should be used for one of these purposes, and not intending to require that the same lot should be used for

all of them. There was another provision, that if not used for these purposes, that is, for one or other of them, the conveyance should be void. By this Act the Archbishop of Baltimore was empowered to hold property in a corporate capacity; it was an enabling Act. One incidental effect of it may be noticed in passing. If the deed from Jourdan to St. John's Church be supposed to require the assent of the Legislature because it was not stated therein that it was intended to be used as a burial ground, all objection for that reason is removed by this Act. It, in the clearest possible manner, gives the assent of the Legislature, inasmuch as it enables St. John's Church to make a valid conveyance of the title. It would be a waste of words to show that this was a full recognition and confirmation of the title already existing. It is true, that this deed is not specially mentioned in the Act of 1832; but that Act in its terms comprehends all lots used as graveyards under the circumstances therein mentioned. And it is settled by *Trustees of Catholic Cathedral Church of Baltimore vs. Manning,* 72 *Maryland,* 116, that a deed may be sanctioned and confirmed by an Act of Assembly without making special reference to it. The sale of the lot under the Act of 1868, chapter 211, relating to burial grounds, put an end to the use for which the Archbishop was authorized to hold the lot by the terms of the Act of 1832. But when the Legislature authorized the sale of these burial grounds, and a devolution of the title to the purchasers, it would be an absurdity in the interpretation of language to hold that it intended to defeat the title of the persons or corporations whose property they had authorized to be sold. The reasonable, just, and necessary construction of the Act of 1868 is that, in this particular, it enlarged the corporate powers granted to the Archbishop by the Act of 1832. It removed the restriction, which required that this lot should be used only as a burial ground, and enabled him to cause the title to be

conveyed to a purchaser. It was certainly competent for the Legislature to do this. All legislative power belongs to the Legislature except where limited by the Constitution of the United States, or by the Declaration of Rights, or the Constitution of the State. We refer not now to certain proceedings in the form of statutes which have been so unjust and oppressive and so repugnant to the spirit of enlightened government, that some good men and able lawyers have declared that they were not in the nature of legislative Acts. Such exceptional transactions do not pertain to our present purpose. We are considering the ordinary course of the lawmaking power within its well-recognized limits. There was nothing in the Constitution to prevent the Legislature from granting corporate capacity to the Archbishop, and there is nothing to prevent it from enlarging and extending that capacity. It had the undoubted right to limit the purposes for which lots of ground conveyed under the Act of 1832 should be held; and it had the undoubted right to remove that limitation. A further reference to this question is not necessary, as it has been ably and lucidly discussed by Judge McSHERRY in *Catholic Cathedral Church vs. Manning.* Our opinion is that under the equity proceedings authorized by the Act of 1868, the purchaser took a good title to the burial lot, including the northwestern half of School House lane. We understand from the agreement of counsel that Sibley has acquired this title, and that the objection which Gump makes to the completion of his purchase applies only to a strip of land a foot and six inches wide, lying in the northwesternmost portion of the alley, and adjoining its boundary. We must affirm the decree below.

*Decree affirmed, with costs.*

(Decided 14th March, 1894.)