# McCurry v. Gibson.

*Bill in equity for specific performance of contract.*

1. *Contracts in restraint of trade.*—Contracts in general restraint of trade are against public policy and void, but those in partial restraint, founded upon a valuable consideration, and reasonable in their operation, are valid: the test by which it may be determined whether a contract is reasonable, is whether it affords only a fair pro tection to the party in whose favor it is made, without being so large in its operation as to interfere with the interests of the public: a partial restraint is that which is restricted in its operation in respect to place.

2. *Same; contracts of professional men.*—There is no distinction made between contracts in restraint of trade entered into by professional men such as physicians, dentists or lawyers, and those of tradesmen.

3. *Same; consideration.*—The purchase by one party of the property and good will of the business of another, furnishes a sufficient consideration for an agreement by the latter not to compete with him in the conduct of the business, and where a contract shows a sufficient consideration, the court will not assume the task of ascertaining. whether the defendant made a good or a bad bargain.

4. *Same; liquidated damages.*—Where contracts in restraint of trade, contain provisions for the payment to the parties for whose benefit they are made, of a stipulated sum in case of a breach by the other contracting party, and such sum is designated generally, as a "penalty," or "liquidated damages," or a "forfeiture," the sum stated will be treated as liquidated damages.

5. *Same; remedy at law and in equity.*—A provision in a contract in restraint of trade, stipulating a named sum as liquidated damages in case of a breach, is no bar to a decree in equity for specific performance of the contract, unless a contrary intention appears. The party complaining has his election to sue for damages, or to have the agreement performed, according to its terms.

6. *Same; averments of bill as showing validity of contract.*—A complainant must allege every fact essential to his right of relief; at the same time, illegality is not presumed, and when the facts alleged are sufficient to entitle a party to relief, and no illegality or unlawful conduct is shown upon the face of the bill, the pleading is sufficient; and if there be such illegality as will defeat the suit, the defendant must bring it forward by plea or answer.

7. *Same; carrying on illegal business.*—Where one party purchases the business and good will of another, and fails to comply with the

[McCurry v. Gibson.]

law regulating such business, he cannot demand specific performance of his contract, or sue for a breach thereof, since the law will not aid him in doing an unlawful act.

8. *Pleading; act regulating practice of medicine.*—Where one physician, having purchased the business and good will of another, files a bill for specific performance of the contract, and the defendant sets up by answer that the complainant had not filed a certificate issued by the medical board, as required by law, (Acts 1890–91, p. 857,) with the probate judge of the county where the business bought was to be conducted, such answer is insufficient, since, it does not appear but that the complainant then resided in another county, and had there obtained, and had recorded, a proper certificate of qualification.

APPEAL from Anniston City Court.
Heard before Hon. JAS. W. LAPSLEY.

The facts of this case are sufficiently stated in the opinion.

MATTHEWS & WHITESIDE for appellant. The bill is without equity, in that it fails to show that the complainant had complied with the laws regulating and licensing the practice of medicine. *Christian v. Am. F. L. & M. Co.*, 89 Ala. 188: *Reel v. Overall*, 39 Ala. 138; *Cockrell v. Gurley*, 26 Ala. 405 ; *McGhee v. Lindsay*, 6 Ala. 20 ; *Fowler v. Scully*, 13 Am. Rep. 708. The complainant having failed to prove (as it was his duty to do) that he had compled with the law regulating the practice of medicine, the contract will be held to be in furtherance of an illegal business, and therefore void. *Pollard v. Phenix Ins. Co.*, 63 Miss. 244; *Kelly v. Home Ins. Co.*, 97 Mass. 288; *Lawrence v. Nat. Ins. Co.*, 127 Mass. 557 ; *Fowler v. Scully, supra; Shippey v. Eastwood*, 9 Ala. 200 ; *Robertson v. Hays*, 83 Ala 291 ; *Milton v. Haden*, 32 Ala. 30 ; 3 Am. & Eng. Enc L. 872 ; 7 Waites Ac. & Def. 67 ; 1 *Ib.* 700. The contract fails to show an adequate consideration. *Moon v. Crowder*, 72 Ala. 80 ; *Irwin v. Bailey*, 72 Ala. 471 ; *Blackwileler v. Loveless*, 21 Ala. 371. The contract was for an unreasonable restraint upon the practicing of a profession requiring *scientific learning*, and involving the health and lives of the people, and hence void. *Bozon v. Farlow*, 1 Mer. 459; *Mitchell v. Reynolds*, 1 P. Wins. 196, note y. The complainant had a complete remedy at law, by action for a breach of the contract, and equity will not interfere, to prevent a,

breach. *Carnes v. Nesbitt,* 7 No. H. 778; *Wolf Creek Co. v. Shutty,* 71 Pen. 180; *O'Donnell v. Rosenberg,* 14 Abb. N. S. 59; *Smith v. Coe,* 33 N. Y. Sup. Ct. 480; *Davis v. Hendrie,* 1 Mon. T. 409; *Wilson v. Davis, Ib.* 183; *Harnaker v. Shroers,* 49 Mo. 406; *Shute v. Hamilton,* 3 Daly 462; 83 Waite Ac. & Def. 769; *Irwin v. Bailey,* 72 Ala. 467; *Moon v. Crowder, Ib.* 79.

R. B. Kelly *contra.* Cited Beach on Inj. 491; *Phenix Ins. Co. v. Cont. Ins. Co.* 87 N. Y. 400; *Burrell v. Doggett,* 77 Me. 543; 2 Chit. Con. 982–87; 2 High Inj. 1167–1175.; *Howard v. Woodward,* 10 Jur. N. S. 1123.

HEAD, J.—The bill was filed on the 30th day of May, 1893, to enjoin the breach of a contract, which the defendant made with the complainant in January of the same year. A preliminary injunction was granted at the institution of the suit, which the city court, upon defendant's motion for a dissolution, refused to dissolve and upon final hearing it was continued in force, according to the prayer of the bill. From the final decree the appeal is prosecuted by the defendant, the assignments of error being based upon the overruling of a demurrer to the bill, and a motion to dismiss for want of equity, and upon the final decree awarding the complainant relief. The bill in its amended form, stripped of repetition and redundancy, and appropriately condensed, contains the following allegations:. (1.) That on the 3rd day of January, 1893, the complainant, "who is also a practicing physician" (to quote the exact language of the bill) purchased from the defendant, who "was and had been prior thereto engaged in the practice of his profession as a physician, in the city of Anniston, Ala.," for the consideration of one hundred and twenty-five dollars, his horse, buggy and medical practice, the vendor agreeing in writing, as a part of the contract, not to practice his profession in that city for two years, and making the further stipulation that in case of failure to comply with the agreement he would pay to the complainant, "as a forfeiture, the sum of two hundred dollars."

(2) That the defendant, in disregard of his agreement, continued to practice medicine in Anniston; was then holding himself out for practice, and was serving

all who desired his services; that he had refused to pay the stipulated sum mentioned in the contract, and was insolvent.

(3) That when the contract with defendant was made, the complainant, upon the faith of the same, as defendant well knew, formed a partnership with one J. B. Simpson, another physician, for the practice of medicine in Anniston, and as such partners, they entered into the practice there, moving their office to one formerly occupied by the defendant, who left the city.

(4) That the complainant and said Simpson, (each being equally interested in any practice done by the other) were then engaged in the pursuit of their profession, when the bill was filed, although, in pursuance of an arrangement between themselves, complainant was temporarily absent from Anniston a part of the time; he at no time having abandoned the practice, in that place; and he, or his partner, having, during the whole period, been engaged in the practice in said city.

(6) That in consequence of the re-entry of the defendant into the practice of medicine in Anniston, the income of himself and partner had diminished about one-third.

(7) That the complainant elects to insist upon a compliance, upon the part of the defendant, with his contract to refrain from practicing his profession in said city, for the stipulated time, and he agrees, in case the preliminary injunction be made final, not to sue defendant for damages for a breach of the contract, nor seek to enforce a payment of the sum of two hundred dollars, or any other amount.

The demurrer assigned twelve grounds of objection to the bill, but all of them may be embraced and treated within the following classification:

(1.) That the contract alleged was void as being violative of public policy, and in unreasonable restraint of the practice of a learned profession.

(2.) That the contract expressed no adequate consideration.

(3.) That the bill showed complainant had an adequate remedy at law.

(4.) That it is not alleged that on January 3d, 1893, the complainant had license to practice medicine in Alabama, nor in Calhoun county, nor in the city of Annis-

ton ; nor that he was able, competent or authorized, under the law, to supply the city of Anniston with the accommodations the defendant obligated himself not to supply, for the two years covered by the contract, or to make the said contract.

The essential averments of the bill were either admitted by the defendant, in his answer or testimony, or satisfactorily established by other proof ; and most of the questions that have been argued may be resolved by a consideration of the ruling upon the demurrer. The other points urged upon us, for a reversal of the decree of the city court, will be noticed when we come to refer to other matters of defense, set up, or undertaken to be brought forward by the answer.

The questions of law raised by the demurrer have, for the most part, been so often the subject of judicial decision, in this country, and in England, that in respect of them, but little room is left for argument. It is well settled law, that while contracts, in general restraint of trade are against public policy and void; yet those in partial restraint, founded upon a valuable consideration, and reasonable in their operation, are valid and binding. 3 Am. & Eng. Enc. Law, p. 882, and cases cited in vol. 10, *Ib*. p. 943. The test which is laid down, by which it may be determined whether a contract is reasonable is whethor it affords only a fair protection to the interests of the party in whose favor it is made, without being so large in its operation as to interfere with the interests of the public.—*Homer v. Granes*, 7 Bingham, 735, 743 ; and this test has been uniformly followed in subsequent cases.— *Wood v. Johnston*, 47 Conn. 175 ; *Bremer v. Marshall*, 19 N. J. Eq., 547 ; *Whappel v. Brockway*, 21 Wend. 157. A partial restraint is that which is restricted in its operation in respect to place ; and this may be made, in express terms, or it may result from a construction of the contract, when viewed in the light of the environments and circumstances surrounding the contracting parties. *Moore & Handley Hardware Co. v. Towers Hardware Co.*, 87 Ala., 206. It is very frequently the case, that such contracts, like that made in the present instance, contain a limit as to time also, but there is a distinction between a general restriction as to *place*, and one as to *time;* it being now well settled that an agreement not to engage in a certain business, in a stated place, or within a reasonably limited territory, is not rendered invalid by a

failure to specify any limit of time for its duration.—
*Carll v. Snyder*, (N. J. Eq.), 28 Atl. Rep. 977; *French v.
Parker* (R. I.), 14 Atl. Rep. 870; *Cook v. Johnson*, *supra*,
and the numerous authorities cited in each of these
cases. Contracts by professional men, such as physi-
cians, surgeons, dentists and lawyers, when coming
within the rules stated, not to practice their professions
in competition with another pursuing the same calling,
have time and again been enforced; and no distinction
is made between their contracts and those of tradesmen.
The suggestion that while valid in a court of law, the
agreement of a person not to pursue a profession involv-
ing the exercise of skill and learning, will not be specifi-
cally performed in equity is not tenable. The doubt ex-
pressed in an early English case, has long since been re-
solved in favor of the jurisdiction of the chancery court;
and numerous instances are to be found of its exercise
when invoked to restrain, by injunction, the breach of a
valid contract not to practice law or medicine in compe-
tition with the complaining party. As we are dealing
with a case between physicians, we will cite a few of the
cases directly in point: *Cole v. Edwards*, (Ia.) 61 N. W.
Rep. 940; *McClung's Appeal*, 58 Pa. St. 51; *Dwight v.
Hamilton*, 113 Mass. 175; *Butler v. Burleson*, 16 Vt. 176;
*Zimmerman v. Dercer*, 52 Mich. 34; *Doty v. Martin*, 32
Mich. 462; *Wilkinson v. Calley*, 26 L. R. A. 114.

It is settled by the authorities that the purchase
by one party of the property and good will
of the business of another, furnishes a sufficient
consideration for an agreement by the latter, in en-
hancement of the value of the good will, not to compete
with him in the conduct of the business. The rule is
the same when a physician sells his property and prac-
tice to a professional brother. It was at an early day
supposed that the consideration, in such cases, must be
adequate; that is, equal in value to the restraint im-
posed; but this idea has been exploded ever since the de-
cision in *Hitchcock v. Coker*, 6 Ad. & Ellis, 438, which
has been repeatedly approved and followed; and in
which C. J. Tindal said: "If by adequacy of considera-
tion more is intended, and that the court must weigh
whether the consideration is equal, in value, to that
which the party gives up or loses by the restraint under
which he places himself, we feel ourselves bound to differ

from that doctrine. A duty would thereby be imposed upon the court, in every particular case, which it has no means whatever to execute. It is impossible for the court to say, whether in any particular case, the party restrained has made an improvident bargain or not." In a note to *Lugier v. Webber*, 92 Am. Dec. 748, 754, many authorities to the same effect are collected. We may add that the same doctrine upon the subject of adequacy of consideration obtains generally in cases of specific performance, and it is now recognized by the leading text writers, as the modern and more reasonable rule, as we declared in *South & North R. R. Co. v. Highland Ave. & Belt R. Co.* 98 Ala. 400. The written contract, exhibited with the bill showed upon its face, a sufficient consideration, and the court will not assume the task of ascertaining whether the defendant made a good or a bad bargain. It is not infrequently the case, that contracts in restraint of trade contain provisions for the payment to the parties, for whose benefit they are made, of a stipulated sum in case of a breach by the other contracting party. The language of such agreements varies widely, as we find from an examination of the cases. Sometimes the sum is called a "penalty," sometimes, "liquidated damages;" and in still other instances, a "forfeiture;" the latter being the word used in the contract between the parties to this controversy. Courts have not always agreed in their views, upon the question whether such stated sums were to be treated as penalties, or liquidated damages, although the current of authorities is, to treat the sum named as liquidated damages, rather than a penalty.—*Keeble v. Keeble*, 85 Ala. 552; *Roper v. Upton*, 125 Mass. 258; *Halbrook v. Talby*, 66 Me. 410, and authorities cited therein. The word is not decisive of the character of the stipulation. We need not repeat the rules which have been adopted for the determination of the question, and which are only different in their application. Upon the authority of the cases cited, and others upon which they are based, we are of opinion that the contract, averred in the bill, contained a valid agreement for the payment of two hundred dollars, as liquidated damages for its breach; and it is out of this fact that the supposed adequacy of the legal remedy, ousting the equitable jurisdiction, is thought to grow. There are some cases, decided by

courts of last resort, which so hold, (*Hahn v. Concordia Society*) 42 Md. 460 ; *Martin v. Murphy*, 129 Ind. 464)'; and we have been cited to like decisions by courts of inferior jurisdiction in New York. Such, however, is not the rule adopted by the New York Court of Appeals, nor is it supported by the weight of authority. We have recently declared that such a provision for liquidated damages was no bar to a decree for specific performance, in a case otherwise sufficient, and we are satisfied the decision was correct.—*Morris v. Lagerfelt*, 103 Ala., 609. No one doubts that the parties might stipulate for the payment of a sum, which upon a proper construction of the contract, would be deemed a price paid for the privilege of resuming business, by the party theretofore restrained. Such was the nature of the agreement construed in *Dills v. Doebler*, 62 Com. 366, (20 L. R. A.), by which it was provided that the party sought to be restrained should be "at liberty to practice dentistry in said Hartford at any time after the termination of this contract by paying to said Dills one thousand dollars ;" and, in that case, it was held that the insolvency of the defendant would not suffice to give jurisdiction to enjoin his resumption of practice, until he paid the stipulated sum, which evidently was not designed to prevent a breach of the contract to refrain from practicing, but was in truth the price of the privilege of again pursuing his calling in the city of Hartford. Of the rule we adopt, Cooley, C. J., in *Watrous v. Allen*, 57 Mich. 362, used the following language : "This is perfectly reasonable and equitable, for the penalty, forfeiture or fixed demages are only agreed upon to render it more improbable that the act against which they are directed will be committed." The same thought, but with more elaboration, was expressed by the Court of Appeals in *Diamond Match Co. v. Rocher*, 106 N. Y. 464 ; and we quote from the opinion an accurate statement of the law, as exactly applicable to this case : "It is of course competent for parties to a covenant to agree that a fixed sum shall be paid in case of a breach by the party in default, and that this should be the exclusive remedy. The intention, in that case, would be manifest that the payment of the penalty should be the price of non-performance, and to be accepted by the covenantee in lieu of performance. *Phoenix Ins. Co. v. Conti-*

*nental Ins. Co.* 87 N. Y. 400—405.   But the taking of a bond in connection with a covenant, does not exclude the jurisdiction of equity in a case otherwise cognizable therein ; and the fact that the damages in the bond are liquidated, does not change the rule   It is a question of intention, to be deduced from the whole instrument, and the circumstances; and if it appears that the perform-ance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced.''   All that is settled by the insertion of a simple agreement to pay liquidated damages ; so that, if an action is brought for damages, the recovery shall be for the amount named, neither more nor less.— *Long v. Bowring*, 33 Beav. 585.   No doubt can be enter-tained in this case, that the parties were not contemplat-ing a breach of the contract, nor a return by the defend-ant to the practice of medicine in Anniston.   He was on the eve of departure to another State, which he expected to make his future home, and had decided and declared that he would no longer practice in said city.   The stipu-lation to which we have adverted is no barrier in the way of granting complainant relief by injunction, which is a negative specific performance of the contract.— *Dooley v. Watson,* 1 Gray, 414 ; *Howard v. Woodward,* 10 Jur. (N. S ) 1123 ; *Fox v. Scard,* 33 Beav. 327 ; 2 High Inj. § I175.   The complainant had his election to sue for damages, or to have the agreement performed, according to its terms.

The various grounds of demurrer which we have con-solidated under the fourth head of the foregoing classi-fication, were directed to the failure of the bill to allege that complainant was authorized to practice medicine, in Anniston, *where the contract was made.*   The bill did not aver that complainant was practicing, at that time, and it will hardly be contended that it was necessary to show that a physician is actually practicing before he can con-tract for the property and good will of another.   The bill not alleging that complainant was practicing when the contract was made, and it being unnecessary to so allege, it must be obvious that it was likewise unneces-sary to make the allegations upon the subject of license and compliance with the law, suggested by the demurrer. If a failure upon the complainant, to comply with legal requirements necessary to constitute him an authorized

practitioner, if he was practicing *when the contract was made* or *even when the bill was filed*, constituted any reason why he should not have relief against the defendant, an appropriate method of presenting the defense is by plea or answer. It is a familiar rule, that a complainant must allege every fact essential to his right to relief; at the same time illegality is not presumed, and when the facts alleged are sufficient to entitle a party to relief, and no illegality or unlawful conduct is shown upon the face of the bill, the pleading is sufficient; and if there be such illegality as will defeat the suit, the defendant must bring it forward by plea or answer.—*Nelms v. Edinburg American Land Mortgage Co.*, 92 Ala. 157, and authorities cited. What we have said, will suffice to explain the ground of our opinion that the city court committed no error in overruling the demurrer.

The bill was very full and complete in its averments, containing some even that were unnecessary. It contained equity, and the motion to dismiss was properly overruled.

The answer, in view, no doubt, of the rule of pleading above stated, undertakes to defend against the bill, by making allegations, which were doubtless designed to show, and which it is argued do show, *first* that *when the contract was made* the complainant had not procured a city license, in accordance with the ordinances of Anniston, to entitle him to practice there, and that he was not, *at that time*, authorized, under the laws of the State to practice in Calhoun county; and, *second*, that *when the bill was filed*, complainant was practicing, in that county, in violation of law. From these premises the legal conclusion is drawn by counsel for appellant, that the contract was void in its inception; and furthermore that the bill cannot be maintained, since it was filed, they say, in aid and protection of the practice, which complainant was carrying on in violation of the laws of the State.

These are the questions which have been earnestly pressed upon us, for a reversal of the decree, and to decide them correctly will require an examination of the averments of the answer and the evidence in the case bearing thereon. It is sufficiently averred and proven, that to authorize one to practice medicine, in Anniston, on January 3d, 1893, a license was required, and that

[McCurry v. Gibson.]

complainant had not taken out a city license, at that
time. It does not clearly appear from the evidence that
he had then begun his professional career, in that place,
but it may be conceded that such was the case. There
was no law requiring any license to make the contract
we have under consideration. It was not unlawful, nor
was any violation of law necessary to its execution. It
does not appear that any infraction of the law was con-
templated in the making of it. It was not void. A
short time after it was made, the city license was taken
out, and it is not contended that when the aid of the
court was sought, the complainant was violating any
law or ordinance of the city of Anniston. We cannot,
therefore, deny relief for anything growing out of the
omission of the complainant to have a city license, when
the contract was made.

We have only now to consider the last question, which
has been insisted upon, and it grows out of the aver-
ment of the answer, wherein it is alleged that complain-
ant had not, up to the time of the answer, filed a certi-
ficate, issued by any medical board, in the State of Ala-
bama, with the probate judge of Calhoun county. to be
registered by said probate judge, so as to entitle him to
practice medicine in Calhoun county. No matter what
may be the rule in a court of law, in an action for a
breach of the contract, it is everywhere asserted that the
ground of the jurisdiction in equity to enjoin a violation
of a valid contract, in restrain of competition, is the dif-
ficulty, not to say impossibility, of computing the actual
damages which the complaining party may sustain
by the loss of business, he might otherwise procure. If
the complainant were not engaged in business, or inter-
ested therein, it is obvious he could suffer no injury by
a resumption of business by the covenantor. For these
reasons, it was held in *Berges v. Armstrong*, 41 Iowa,
447, that a bill filed for an injunction in a case of this
character was wholly insufficient, if it did not show that
the complainant was himself, when the injunction was
applied for, engaged in the business, which the defen-
dant had agreed not to carry on in a town of that State.
Thus it is that the business, or some substantial inter-
est therein, is an essential part of the case to be made
by the bill. From these premises, it is argued and with
great force, that since it is necessary to call to complain-

ant's aid, in making out his case, the practice of his
profession, or some substantial interest therein, a court
of equity will repel ·him, if he is violating the law, in
the very practice he seeks to profect. The law out of
no consideration for a defendant, but from a resolution
to maintain its own supremacy, will not aid a plaintiff
or complainant to recover for injury to an unlawful bus-
iness.—*Smith v. Dinkinspiel*, 91 Ala. 528. The illegality
of the complainant's business, whether conducted by.
himself, or conjointly with his partner, not appearing
by his pleadings or proofs, it must be set up by the de-
fendant, and the averments whether contained in a plea
or answer must be sufficient in their statement of facts
to show the illegality.—*Wilde v. Wilde*, 37 Neb. 891.
The only averments of the answer upon the subject of
the status of complainant's business, when the bill was
filed, is·that quoted above. It asserts simply, in sub-
stance, that complainant had not filed a certificate
doubtless meaning a certificate of qualification—with
the probate judge of Calhoun county, and the evidence
goes no further than this extent. Does this show a vio-
lation of the law? If an indictment against the com-
plainant contained no more than this, would it not be
subject to demurrer or motion to quash? If the defend-
ant had brought forward the defense by a plea contain-
ing only that averment, would it have been adjudged
valid, if set down for·hearing upon its sufficiency.? A
demurrer to an answer is unknown to chancery practice,
and if the answer, setting up new matter, fails to con-
tain sufficient matter to bar relief, the defendant alone
must bear the consequence of the imperfect manner in ·
which he puts forward his defense.—*Salma v. Clagett*, 3
Bland (Md.) 141. We are compelled to say, that what-
ever the real facts may have been, we cannot conclude
from anything contained in the answer, or even from
the evidence, that complainant was illegally practicing
medicine' in. Anniston, which is situated in Calhoun
county; where he instituted his suit. The act of
Feb. 18th. 1891, amendatory of section 4078
of the. criminal Code, (Acts 1890–91, p.:
857); prohibits the practicing of medicine·
or surgery in the State without having first obtained a
certificate of qualification from one of the authorized
boards of medical examiners of this State, with·a pro-

[McCurry v. Gibson.]

viso excepting from its operation physicians then practicing in the State, who were graduates of a respectable medical college, and had complied with the law by having their diplomas recorded by the judge of probate in the county in which they were practicing, and also physicians who had practiced in this State for five years. An indictment under this act, making the charge in the language of the main cause would be good without negativing that the defendant came within the exceptions contained in the proviso.—*Bell v. State*, 104 Ala. 70. Under this act, there is no authority to practice under a license, and hence an indictment for practicing without a license is no longer good.—*Nelson v. State*, 97 Ala. 79. If the answer had alleged that the complainant was practicing medicine in Calhoun county without having *obtained* a certificate of qualification from one of the authorized boards of medical examiners of this State, it would have made a *prima facie* case of illegal practicing, which he would have been forced to meet, either by bringing himself within the proviso, or by proving that he had the proper certificate of qualification, (*Porter v. State*, 58 Ala. 66); and that it had been recorded in the office of the probate judge in the county where he resided when it was issued.—Code of 1886, § 1306. Until recorded, it cannot be said to be complete, nor to possess any efficacy of an authority to practice medicine.—*Nicholson v. State*, 100 Ala. 132. Construing the averments of the answer most strongly against the pleader, it must be held that complainant had procured a certificate of qualification, which he had not recorded in Calhoun county. It was not averred that the complainant resided in Calhoun county when the certificate was issued to him, and it was not necessary to record it there unless such was the case. *Non constat*, but that he procured it in another county where he then resided, and it had been there recorded. In the absence of a sufficient answer defendant was put to no proof on this subject. The attempted defense has not been maintained.

There is no error in the record and the decree is affirmed.