## DANGERFIELD *v.* WILLIAMS.

---

GRAVEYARDS; ADVERSE POSSESSION; COLOR OF TITLE; ESTOPPEL; STATUTE OF LIMITATIONS.

1. That interments in a graveyard have ceased for several years, and that a portion of it has been appropriated by the public for street pur-

poses, do not of themselves prove disuse and abandonment of the remainder of the land for graveyard purposes.

2. If one enters land under color of title, by deed or other written document, and occupies it adversely for the statutory period, he acquires a title to the extent of the boundaries contained in the writing, although the title conveyed to him is good for nothing.

3. Where a religious body enters upon land conveyed to it for graveyard purposes, and the conveyance is void because in contravention of sec. 34 of the Maryland Bill of Rights, in force in this District, it may nevertheless acquire title by adverse possession for the statutory period.

4. An open, continuous, exclusive, and visible adverse possession of land for twenty years barred entry by the record owner, under the statute of 21 James I. chap. 16, sec. 1 (Alexander's British Statutes, 446, 447), before the Code of this District went into effect. (Following *Johnson* v. *Thomas*, 23 App. D. C. 150, and *Columbian University* v. *Taylor*, 25 App. D. C. 131.)

5. Where the defendants in a suit in equity claimed title to land involved therein as the heirs at law of a certain person, and a compromise settlement between the parties provided, among other things, that the land should be sold, and a portion of the proceeds distributed to the complainant and a portion to the defendants, as such heirs at law, and the land was accordingly sold, in an accounting between the defendants as to their portion of the proceeds, two of them, who signed such agreement, are estopped from claiming, in another capacity, a larger interest in the fund than they would be entitled to as such heirs at law.

6. Devisees named in the will of one whose right of entry upon land was barred at the time of his death by the statute of limitations take no title to such land under the will.

No. 1577.  Submitted December 14, 1905.  Decided January 4, 1906.

HEARING on an appeal by the exceptants from a decree of the Supreme Court of the District of Columbia overruling their exceptions to, and confirming, a report of the auditor.

*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. James E. Padgett, Mr. Edwin Forrest,* and *Mr. Henry E. Davis* for the appellants.

*Mr. T. Percy Myers* for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

This appeal is taken from a decree of the supreme court of the District of Columbia, which overruled certain exceptions made by appellants, Virginia Dangerfield and Johanna D. Jackson, to the report of the auditor, and ratified and confirmed it.

To a proper understanding of the case, and for the purpose of an intelligent consideration of the assignment of errors, a full statement of the facts is necessary. These facts are carefully and correctly recited in the auditor's report, and are thus stated by him:

"Ann Cassanave executed, on the 25tn of March, 1808, a deed of conveyance to the Right Rev. John Carroll, bishop of Baltimore, to his heirs and assigns, a certain parcel of land in the District of Columbia containing 2 acres 3 roods and 12 perches, for the use of the Roman Catholics of the city of Washington as a graveyard. The deed reserves to the grantor 1,000 square feet for the interment of certain persons designated in the conveyance. The grantee entered into possession of the land, and it was used by the Catholics of Washington as a graveyard until 1889 when the Commissioners of the District of Columbia by due proceedings procured the condemnation of a portion or strip of the said land for the extension through the tract of 'R' street north. In that proceeding damages for the taking of the said land were assessed in the sum of $3,500. This being adversely claimed by James Gibbons, cardinal of the see of Baltimore, in whom by mesne conveyances the title of the said John Carroll became vested, and the heirs of the said Ann Cassanave, the said Commissioners filed in equity cause No. 12,143 a bill of interpleader praying the court to require the claimants to interplead their rights in the premises. Pending the proceedings in that cause, Cardinal Gibbons filed his original bill in the present case setting forth the original conveyance and the possession and use of the land for the purposes of a graveyard continuously from the date of the conveyance to the time of the filing of the said bill excepting the portion taken by the Commissioners as above stated; and, for certain reasons and conditions set forth in the

bill, he prayed the authority of the court to remove all the bodies then remaining interred in the said graveyard, to sell the land, and to procure another tract for the reinterment of the bodies to be removed. All of the parties claiming as or through heirs at law of the said Ann Cassanave were made defendants to this bill, and appeared and answered. The bill was filed on the 28th of March, 1893.

"Thereafter the defendants filed their cross bill against the complainant, setting forth the original pleadings, and asserting that the original conveyance to John Carroll was void under the 34th section of the Declaration of Rights of Maryland and in force in this District at the time of the conveyance, for the reason that it attempted to convey for the use of a graveyard a piece of ground containing more than 2 acres, whereby the title to the land remained in the said Ann Cassanave and descended to her heirs at law.

"The cross bill averred that the use of the land as a graveyard had been abandoned, by reason whereof the title, if any, conveyed by the said original deed, reverted to the defendants as heirs at law of Ann Cassanave, or as claiming through her heirs at law. Answers were filed to the cross bill, and the cause was at issue.

"About the 10th of December, 1894, a stipulation was made between the parties to the cause containing the following agreements:

"First. The defendants relinquished all claim to the damages awarded for the extension of 'R' street.

"Second. That the bodies remaining in said graveyard and the tombstones should be removed by the complainant at his own cost and expense.

"Third. That the property should be sold by trustees named in the stipulation and the net proceeds distributed, three fifths to the complainant, and two fifths to the defendants Williams and Young, trustees for the heirs at law of Ann Cassanave, to be by them distributed pursuant to the terms of their trust, to said heirs at law as their interests might appear.

"On the 15th of November, 1889, the heirs at law of Ann

·Cassanave executed a deed conveying to the said Williams and Young the land and premises in question in trust to sue for and ·defend the right and title of the grantors in and to the said land and premises and to recover possession of the same or the pro- ·ceeds thereof.

"Subsequent to the order of reference the parties interested ·in the subject-matter entered into a stipulation as to the facts .and conditions affecting the issue in the reference. After re- -ferring to the conveyance from Ann Cassanave to Bishop Car- roll, it is agreed that the land therein described was used as a ;graveyard until the year 1889. The relationship of the de- fendants as the heirs at law of the said Ann Cassanave are also set forth and agreed upon in the said stipulation, and the several - deeds of conveyance and the will of Peter Cassanave form a part ·of the stipulation.

"The defendants Virginia Dangerfield and Johanna Danger- -field Jackson claim that they are entitled to receive one half of the fund in the hands of the trustees, Young and Williams, as ·the sole heirs at law of Mary Elizabeth Dangerfield (Howle), ·to whom Peter Cassanave, one of the two heirs at law of Ann Cassanave, devised his interest in the property. The defend- ants also claimed a further interest in the fund as heir at law ·of the said Ann Cassanave."

Upon this state of facts, the auditor in this proceeding, which was one wherein he was appointed to state a distribution of the -funds which came into the hands of Charles P. Williams and Joseph N. Young, trustees, made the findings, conclusions, and report which were excepted to, the exceptions overruled, and the report confirmed by the court. The fund was the two fifths re- ·ceived by Williams and Young, as trustees, as the result of the sale of the property, the title to which was in controversy, and which was sold under the terms of the stipulation entered into ʼby all of the parties to the suit brought by Cardinal Gibbons in 1893.

The auditor's conclusion from the facts and the law applicable thereto resulted in his report that these appellants could not ..claim any part of the fund by reason of the devise contained

in the will of Peter Cassanave, and stated the distribution of the fund to the heirs at law of Ann Cassanave. His conclusions, so far as they were excepted to, and the exceptions thereto which were overruled, will be considered in detail, as they are the basis for the assignment of errors. These are as follows: .

The court erred in confirming the report of the auditor, and in holding and finding that on December 10, 1894, the date of stipulation, the land in controversy was not abandoned for the purpose of a graveyard; and in holding and finding that the possession of the land by the plaintiff Gibbons during the time alleged caused a complete and perfect title against all persons, not under some legal disability; and in holding and finding that the statute of limitations affected the relation of the parties in reference to the fund in question; and in holding and finding that the stipulation of December 10, 1894, estopped these exceptants from claiming a one-half interest in fund by virtue of will of Peter Cassanave; and in holding and finding that Peter Cassanave had no estate or interest in said property subject to devise, and that appellants cannot claim any part of fund by reason of devise; and in holding and finding, and so ordering distribution of fund, that the appellants were only entitled to one half of one sixth to each of them; and in holding and finding that at time of commencement of suit, and at time of conveyance to trustees, and at time of stipulation of December 10, 1894, and before and ever since the said times, the appellants had not claimed a one half interest in said real estate under will of Peter Cassanave; and in not holding and finding that the appellants were entitled, by reason of will of Peter Cassanave, to one half of fund in hands of trustees.

1. There is no ground for claiming error in the finding that on December 10, 1894, the land in controversy had not been abandoned for the purpose of a graveyard. The stipulation of settlement bearing that date, which was signed by Cardinal Gibbons, the complainant in the original suit, by his solicitors; signed by the trustees, Williams and Young, and by the other defendants, including these appellants, by their solicitors,—is

a complete answer to the claim of error in this particular. The second clause recognizes the fact that the land was still used as a graveyard, for it provides that the bodies interred therein and the tombstones shall be removed by Cardinal Gibbons at his own expense. It is further admitted by these appellants, in the stipulated statement of facts in the present proceeding, that the land in question was continuously used as a graveyard until the year 1889. There is nothing which tends to show a disuse between 1889 and 1894. That interments had ceased several years before does not prove disuse. As long as the bodies remain therein, and in the absence of any affirmative proof that the land was used for other purposes, it was a graveyard. To hold otherwise because of a failure to continue interments would make Cardinal Gibbons, and those whom he had succeeded, holders beyond any question of the land under an adverse possession covering a period from 1863 to 1889, a long enough period to create a perfect title against these appellants, who are not shown to have been for any portion of that time under any legal disability. It is true that in 1889 the Commissioners of the District of Columbia extended "R" street through the graveyard, but this did not affect the remainder of the land, and the stipulation before referred to surrendered any claim these appellants might have had to that fund, as it expressly consents that Cardinal Gibbons might receive it.

2. It is next insisted that the possession of the land by Cardinal Gibbons, and those under whom he held, was insufficient to vest a complete and perfect title against all persons not under some legal disability, and that it was error to hold otherwise. From 1808, the date of the deed from Ann Cassanave to Bishop Carroll, he, and his successors in office were in open and notorious possession down to at least 1894, and the right to such possession was not claimed by anyone in any way down to 1889, a period of over eighty years.

We may concede, and not question, that the deed from Mrs. Cassanave to Bishop Carroll was void by reason of it being within the prohibition contained in section 34 of the Maryland Declaration of Rights. Conceding that Mrs. Cassanave, the

next day after the delivery of the deed, had the right to vacate it, the fact remains that she never took any step in that direction. Her immediate heirs, one of whom was her son, Peter Cassanave, under whose will these appellants claim a one-half interest in the fund, though living until March, 1860, never made any attempt to regain possession of the land in question. It is quite suggestive that Peter Cassanave, by his will executed in 1856, expressed the desire to be buried by the side of his beloved mother in this very graveyard. It further appears that, after Peter Cassanave's death in 1860, the mother of these appellants in no way claimed that the title of the land in question became vested in her under the terms of her uncle's will. It does not appear that the appellants, after the death of their mother, made any attempt to obtain title to any part of, or interest in, the land in question. In fact, no heir at law of Ann Cassanave at any time made any attempt to evict Bishop Carroll, or any of his successors in interest, or to show title in themselves to the land. That they made claim to the land at some time, presumably after a portion of the land was taken by the District for street purposes in 1889, appears from the bill filed by Cardinal Gibbons in March, 1893.

Unless there is something peculiar to this case, the title to the land by adverse possession became vested in Cardinal Gibbons, or his predecessors in interest, long before Peter Cassanave executed his will under which these appellants claim a one-half interest in the fund. The possession under color of title began in 1808, the will of Peter Cassanave was executed in 1856, and he died in 1860. Long before either date the right of Peter Cassanave, or any of the heirs of Ann Cassanave, to entry upon the land in question had determined. The rule applicable to adverse possession in the District of Columbia and in Maryland, in all ordinary cases, has been repeatedly and uniformly laid down by this court, by the Supreme Court of the United States, and by the court of appeals of Maryland. *Johnson* v. *Thomas,* 23 App. D. C. 150; *Columbian University* v. *Taylor,* 25 App. D. C. 131; *Sharon* v. *Tucker,* 144 U. S. 533, 36 L. ed. 532, 12 Sup. Ct. Rep. 720; *Gump* v. *Sibley,* 79 Md. 165, 28 Atl. 977.

It is urged by appellants that the deed from Ann Cassanave to Bishop Carroll was absolutely void under the Maryland Bill of Rights, and that for the same reason any claim of adverse possession is not well founded. The argument is that the policy of the State in enacting article 34 of the Bill of Rights was to prevent religious bodies from acquiring real estate; that this article was not enacted for the benefit of the private individual,—the owner of the land,—but for the protection of the State; and that it follows that, if such bodies are prohibited from acquiring land by deed or contract, they are prohibited from such acquirement by adverse possession. The argument is plausible, but not well founded. The article referred to, so far as it applies to real estate, reads: "That every gift, sale, or devise of land to any minister, public teacher, or preacher of the gospel, as such, or to any religious sect, order, or denomination, or to or for the use or benefit of, or in trust for, any minister, public teacher, or preacher of the gospel, as such, or of any religious sect, order, or denomination, * * * without leave of the legislature, shall be void; except always any sales, gifts, or devises of any quantity of land not exceeding 2 acres for a church, meeting or other house of worship, and for a burying ground, which shall be improved, enjoyed, or used only for such purpose, or such sale, gift, lease, or devise shall be void."

The deed given by Ann Cassanave to Bishop Carroll was clearly good for nothing, being in contravention of said article 34, in that it attempted to convey more than 2 acres of land. Ann Cassanave had the right to treat it as null and void. *Grove* v. *Disciples of Jesus Christ,* 33 Md. 451, 454. Notwithstanding that the deed was good for nothing, it appears that Bishop Carroll at once entered into possession under color of title, and that title was held upwards of eighty years. His holding comes within the general rule repeatedly laid down by the Maryland court of appeals, and thus clearly stated in *Hoye* v. *Swan,* 5 Md. 237, 248; "But, if one enters under color of title, by deed or other written document, and occupies and improves the land, he acquires in law actual possession to the extent of the boun-

daries contained in the writing, and this though the title conveyed to him by the deed be good for nothing."

In *Gump* v. *Sibley, supra,* it was asserted that a deed was void in view of the article above quoted, because it was not stated upon the face of the conveyance that it was to be used as a burial ground. It appears that one Jourdan conveyed certain land to the trustees of St. John's German Catholic Church of Baltimore. The land contained less than 2 acres, and was purchased for and used as a burial ground. The court said: "If the decision in *Grove* v. *Disciples of Jesus Christ,* 33 Md. 451, is to be construed as establishing the right of a grantor who had received full and valuable consideration, to vacate his deed, because it did not express on its face the lawful purpose for which the property was bought, this right vested in Jourdan as soon as he had delivered the deed. Consequently the statute of limitations commenced running against him on that very day, and has been running for more than sixty years. The deed, even if void, could not be less than *color of title,* and the entry under it would constitute adverse possession to the extent of the boundaries contained in it; and a continuance of this possession for twenty years would perfect the title against all persons not under legal disabilities."

If adverse possession can be invoked by one holding title under a deed void because in contravention of one of the provisions of article 34 of the Maryland Declaration of Rights, we see no reason why the same rule is not applicable as to deeds void in view of other provisions of the article. Surely it makes no legal difference whether the deed be void because it fails to state on its face that the land is to be used for a burial ground, or because it attempts to convey for the purposes of a burial ground a little more than 2 acres of land. In our opinion Bishop Carroll and those holding under him acquired title to the land in question by an adverse possession of some eighty years.

3. If we are correct in our conclusion that the appellants' title to the land was lost by the vesting of the title in another through adverse possession, it is equally true that the statute of limitations affects the relation of the parties to the fund in ques-

tion.  The statute in force in this District (Alexander's British
Statutes, 446, 447) forbids the entry by any person into any
lands, or tenements, or hereditaments, but within twenty years
next after his or their right or title shall have first descended or
accrued to him or them; and, in default thereof, such persons
not entering and their heirs are debarred from such entry there-
after to be made.  More than twenty years elapsed in this case,
and the possession which bars entry was open, continuous, ex-
clusive, and visible.

4. It is urged that error was committed in holding that the
stipulation of December 10, 1894, estopped appellants from
claiming a one-half interest in the fund by virtue of Peter
Cassanave's will.  The bill originally filed by Cardinal Gibbons
set forth that the defendants, except those named as husbands,
were sued as "heirs at law of Ann Cassanave," and, "as such
heirs at law," were claiming to own some right of reversion
therein.  The answer filed by the defendants, including these
appellants, expressly admits these allegations.  The cross bill
thereafter filed by the defendants to the original bill, including
these appellants, claims title to the land "as heirs at law and
next of kin of Ann Cassanave."  No intimation is given of any
claim founded on the will of Peter Cassanave.  A decree was
thereafter entered upon a stipulation signed by all the parties.
The settlement was not based on the acknowledgment of any
legal right in the defendants to the land in question.  It pro-
vided, among other things, for the sale of the property, and that
of the net proceeds derived from the sale two fifths were to be
paid to Williams and Young, trustees, "for the heirs at law of
Ann Cassanave," to be by them distributed pursuant to the
terms of their truth to "said heirs at law," as their interest may
appear.  If the appellants intended to make claim to any part
of the fund, save as heirs at law of Ann Cassanave, they should
have then asserted it.  The fact that they remained silent is very
persuasive that in this compromise settlement they waived, and
intended to waive, any claim to any part of the fund under the
terms of Peter Cassanave's will.  Here it may be said that their
claim is under the residuary clause of that will.  No mention

of this land is contained in the will, and in no way, so far as the record shows, did Peter Cassanave ever indicate any desire to gain title to it. The money which is in controversy came to the heirs at law of Ann Cassanave as a compromise. It did not come to the appellants as daughters of the devisee mentioned in Peter Cassanave's will. Had they then insisted that their claim be recognized, the settlement very likely would not have been made. The other heirs at law would doubtless have refused to agree to a settlement that would have cut in two the portions they were to receive. It is also fair to presume that Cardinal Gibbons, in agreeing to the settlement, wished to recognize the claim—whether legal or not is immaterial—of the heirs of the original grantee of the land, and did not intend to prefer any of her heirs at law. The appellants were silent when they should have spoken, and, not then having spoken, cannot now be heard to speak. By the express terms of the stipulation, the fund in question was to go to the heirs at law of Ann Cassanave, and to them as such heirs, and not in any other way. We think an estoppel is shown by the stipulation of settlement, and that is fortified by the then silence of the appellants. No error can be founded in the finding of the auditor, which was duly confirmed by the court, that the appellants are bound by the stipulation of settlement and its recitals.

5. In view of our conclusions as above set forth, and especially of the last, we deem it unnecessary to discuss the fifth assigned error, which raises the question whether Peter Cassanave had any interest in the graveyard that he could devise, and upon which devise appellants can predicate their claim. The land was used as a graveyard when the settlement was made, so it had in no event reverted to the descendants of Ann Cassanave, or those holding in any manner under or through them. If, as we think, adverse possession has been shown, and the statute of limitations had run against Ann Cassanave's heirs, it follows that her son Peter had no interest that he could devise in 1856.

The remaining alleged errors do not require extended comment. The fund was properly marshaled by the auditor for distribution. Even though the auditor should have found that the

appellants claim [ed] at some time a one-half interest in the fund to be received by the trustees, we think it wholly immaterial in view of the terms of the stipulation of settlement dated December 10, 1894.

Many questions raised in appellants' brief are interesting, and are forcibly presented, but beyond those we have considered it is unnecessary to go, and no useful purpose would be subserved by their discussion.

Our conclusion is that the decree of the Supreme Court should be affirmed, with costs, to be paid out of the funds in the hands of the trustees, and it is so ordered.          *Affirmed.*